Arturo ALMANZAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–84–00054–CR.

Court of Appeals of Texas,
El Paso.

Nov. 28, 1984.

Robert Perel, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment at sixteen years imprisonment. We affirm.

On August 21, 1981, the Appellant together with Fernando Almanzar, Oscar Alvarado and Saul Alvarado drove to Fabens, Texas, from their nearby homes in San Elizario. They encountered a rival gang and in an ensuing brawl (described in more detail below), Frank Sierra, Jr., was stabbed some twelve times. He died as a result of a stab wound to the heart, with contribution from a severe brain injury produced by blunt instrument trauma to the temple. The Almanzars and Alvarados were arrested later that night, and all were charged with this offense. Appellant and the Alvarados engaged the services of San-

tiesteban and Juarez in their defense. Fernando Almanzar obtained other counsel. Attorneys Jose Juarez and Judy Sanders (an associate of Santiesteban and Juarez) carried out the actual pretrial preparation of the defense for Appellant and the Alvarados. In mid-September, the prosecuting authority contacted Ms. Sanders and presumably Mr. Juarez and offered immunity to the Alvarados in exchange for their grand jury and trial testimony. Mr. Juarez discussed the offer with the Alvarados and they accepted. They testified before the grand jury with Mr. Juarez in attendance for consultation. As a result, Appellant and Fernando Almanzar were indicted. At trial, the Alvarados were called as State's witnesses. Fernando Almanzar was convicted of murder and received a thirty-year sentence, affirmed by this Court in *Almanzar v. State*, Cause No. 08–84–00044–CR, (November 28, 1984) (unpublished). Appellant received a sixteen-year sentence. Throughout the trial, Appellant continued to be represented by Ms. Sanders on behalf of Santiesteban and Juarez.

After conviction, Appellant obtained new counsel and filed a motion for new trial, alleging conflict of interest on the part of his trial counsel. The motion was overruled on December 9, 1983.

■ Admittedly, our first impression was that this case presented the clearest possible conflict of interest in the joint representation of Appellant and the Alvarado brothers. A detailed examination of the grand jury testimony, the trial testimony, Appellant's confession, objections, final argument and the motion for new trial record ultimately dispelled that preliminary reaction. There is no dispute as to the applicable law governing appellate review of conflict of interest. An attorney may not serve two masters with adverse interests. Where one defendant-client stands to gain from an act of representation producing injury to another defendant-client, actual conflict of interest exists. *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333

(1980); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). On appeal, it must be shown that an actual conflict of interest adversely affected the performance of counsel and the adequacy of the representation afforded. Upon such a showing, resulting actual prejudice or injury need not be demonstrated. *Ex parte Acosta*, 672 S.W.2d 470 (Tex.Crim. App.1984).

■ A careful examination of the record reveals that despite a serious potential for conflict before trial, there was in fact no actual conflict between Appellant and the Alvarados. There was a conflict between the Alvarados and Fernando Almanzar, which tends to cast a pall of conflict over the entire case, particularly as a result of the self-defense issue.

The defense theory, supported by the evidence, was that the four drove to Fabens to meet Saul Alvarado's girlfriend, pick up some other girls and go to a movie. Fernando was driving, Saul Alvarado was in the front seat, and Appellant and Oscar Alvarado in the rear. They were confronted by approximately seven "cholos" from a Fabens gang on foot. Probably due to prolonged conflicts between gangs from these adjacent towns, the Fabens group began to throw rocks and bottles at the Almanzar car. Fernando Almanzar made several turns initially to evade the Fabens groups. They reencountered them on an adjacent street. The car veered into the group, struck one and then encountered a cinder block wall. Appellant and the Alvarados testified that they were not sure if Fernando had intentionally driven into the group. A thrown cinder block had just shattered the windshield and it appeared that he either lost control of the car or could not see. Fernando testified that the latter explanation was the true cause.

When the car struck the wall, Frank Sierra and his companions attacked. Sierra reached in the front passenger window and made stabbing motions at Saul Alvarado. Only the Appellant actually saw a blade in Sierra's hand. From the back seat, Oscar Alvarado used a set of "numchuks" on Sierra's arms to keep him away from Saul. Fernando Almanzar and Appellant exited the left side of the vehicle. Fernando dragged Sierra away from the right side of the car but was then beset by Sierra and two others from Fabens. Getting the worst of the encounter and receiving a stab wound to his arm, he drew and opened his own pocket knife and admittedly stabbed at Sierra. He testified that he believed he struck him twice. Meanwhile, Appellant, seeing Fernando in trouble, came to his aid by striking Sierra in the head with a baseball bat taken from the back seat of the vehicle. The Alvarados exited the vehicle and gave further assistance to the Almanzars. Fernando drew Appellant back to the car but not before Appellant delivered a few final kicks and bat blows to the lower portion of Sierra's prone body. Fernando testified that as he and Appellant reentered the car, Saul Alvarado was crouched above Sierra making stabbing like movements at his chest. Once in the vehicle, Fernando admitted stabbing Sierra and exhibited his bloody knife. Oscar Alvarado cleaned it and returned it to Fernando who later gave it to Saul Alvarado for disposal. Instead, Saul kept it and it was recovered by the Sheriff's deputies. Saul admitted ownership of another knife found at the scene, but denied using it or stabbing Sierra.

The State presented two witnesses from the rival Fabens gang who denied any rock-throwing provocation. Based on their testimony and the potentially inculpatory evidence from the Alvarados and Almanzars, the State presented the Appellant and his companions as the aggressors, intentionally trying to run down the Fabens group in the vehicle.

The jury received instructions with regard to party responsibility, accomplice testimony and self-defense in the face of actual or apparent danger. The only conflict in testimony from the Alvarados and Almanzars is with regard to Saul Alvarado's possible infliction of stab wounds upon Sierra at the conclusion of the fight. Only Fernando presented such a scenario. On the other hand, Saul, Oscar and Appellant all

heard Fernando admit stabbing Sierra and saw his bloodied knife. At trial, Fernando admitted stabbing at Sierra and believed he struck him twice. This conflict, however, only pertains to Fernando and Saul. In no way does it present a conflict between Appellant and the Alvarados. In fact, it presents no conflict at all unless the self-defense presentation fails.

On the other hand, Appellant's participation is uniformly described by his extrajudicial written confession which he reaffirmed at trial, the grand jury testimony of both Alvarados and the trial testimony of all four. The stab wound to the heart was the undisputed cause of death. Appellant was either not guilty by reason of self-defense or guilty as a party. He consistently admitted striking Sierra with the baseball bat in order to aid Fernando, and that same act was similarly described by his companions. Consequently, the Alvarados' grand jury and trial testimony furthered the defensive theory of self-defense. Only if that failed would a conflict arise on the defense side and then only between Saul Alvarado and Fernando Almanzar.

Confronted with a confession by Appellant which could be presented in an edited fashion by the State and potential witnesses from the other gang who would deny any provocation, Appellant's counsel, Ms. Sanders, had to find the most credible manner of placing self-defense before the jury. Obviously, she could move to introduce the remainder of Appellant's confession and place him on the stand, with self-interest on his part as the negative credibility factor. Whether Fernando would take the stand and present the self-defense scenario was in his hands subject to advice of his counsel. Along comes the State and offers to immunize her other two clients in exchange for their testimony. From pretrial interviews, their testimony would bolster the self-defense theory and present no additional or conflicting harm to the Appellant—Fernando yes, but her third client no. Furthermore, their testimony as to self-defense would bear a certain stamp of State endorsement. In fact, this is one of those cases in which the State presents exculpatory evidence in its case-in-chief and then must rebut it in order not to be bound thereby. The grand jury and trial testimony of the Alvarados was consistent with the self-defense expectations of counsel and presented no conflict with Appellant's interests.

Appellant's present counsel castigates trial counsel for not conducting a more vigorous cross-examination of the Alvarados. It was in her third client's interest not to do so. If she assisted in developing a theory that Saul dealt the death blow, she would help Fernando, not her client. Any attack on the credibility of the Alvarados would weaken their self-defense credibility as well, which was working to her client's full benefit. What she would have accomplished had she done so would be to expose her third client to liability as a party to either Fernando's or Saul's primary liability. In final argument also, it was to her client's advantage not to assail the credibility of the Alvarados.

Not only was there no actual conflict of interest, but the immunity and State's use of the Alvarados enhanced Appellant's self-defense posture, which was his only defense. That defense failing, his own confession and testimony rendered him guilty regardless of the conflict between Saul Alvarado and Fernando Almanzar.

Our conclusions are the peculiar result of the evidentiary development of this case by both sides. It is appropriate, however, to express a final word of caution concerning the dangers of multiple representation in a criminal defense, the close scrutiny which trial judges and lawyers should apply to such situations and the need for communication and explanation of potential conflicts to clients in advance of trial. Retrospectively, this case presents no actual conflict and no diminution of defensive representation. We would hope, however, that all participants seek and arrive at such a conclusion prospectively in such cases. Ground of Error No. One is overruled.

The judgment is affirmed.