**Arturo ALMANZAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 076–85.

Court of Criminal Appeals of Texas, En Banc.

Jan. 29, 1986.

Bobby Perel, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Carla J. Olivarez, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

This is an appeal from a conviction for the offense of murder. The jury assessed punishment at sixteen years. The conviction was affirmed by the Eighth Court of Appeals (El Paso), see *Almanzar v. State*, 682 S.W.2d 393 (Tex.App.—El Paso, 1984), which held that the appellant was not denied effective assistance of counsel. We granted appellant's petition for discretionary review to examine this holding.

On August 21, 1981, Fernando Almanzar, appellant, Oscar Alvarado and Saul Alvara-

do drove from their hometown of San Elizario to Fabens. Fernando Almanzar and Saul Alvarado were in the front seat, while appellant and Oscar Alvarado sat in the back seat. While in Fabens, a group of young men, described as "cholos," and the four from San Elizario fought. According to the defense, the "cholos" started the brawl by throwing rocks and bottles at the car. However, one of the Fabens gang testified that they did nothing to provoke the attack. A cinder block was also allegedly thrown at the car, smashing the windshield. The car veered into the group, and crashed into a cinder block wall, pinning one of the "cholos" against the wall, and breaking his leg. There was conflicting testimony whether Fernando did this intentionally, or had lost control of the car.

At this point, the "cholos" attacked. One of them, Frank Sierra, reached through the front passenger side window and made stabbing motions at Saul Alvarado. Appellant testified he saw a knife in Sierra's hand. None of the other three actually saw it. Oscar Alvarado, who was in the back seat, protected Saul with a pair of "numchucks" and struck Sierra on his arm. Two others attacked the driver's side of the automobile, and one stabbed Fernando on the arm. Fernando testified that he jumped out of the driver's side of the car, and was fighting with two of the "cholos" when Sierra came from behind and grabbed Fernando by the hair and was kicking at him. Appellant, wielding a bat, then exited the car, and all the "cholos" except Sierra ran away. Fernando testified that he managed to open his knife and stab Sierra twice. Sierra was still fighting with Fernando when appellant hit Sierra several times with the bat. Sierra fell to the ground. Saul and Oscar Alvarado got out of the car and started beating Sierra. According to Fernando, Saul Alvarado was kneeling over Sierra and making stabbing motions. Sierra died shortly thereafter from twelve stab wounds and contribution from a brain injury caused by a blow to the head. The four left and returned to San

Elizario where they were later arrested, and charged with the murder of Sierra.

While in jail, Saul and Oscar Alvarado convinced appellant to employ as counsel the El Paso law firm of H. Tati Santiesteban & Associates. Fernando Almanzar employed other counsel. An associate of H. Tati Santiesteban & Associates, Judy Sanders, handled the trial of the case for Santiesteban. According to Sanders, the district attorney's office contacted her and offered immunity to the Alvarados provided they would give grand jury and trial testimony. Another attorney with H. Tati Santiesteban & Associates, Jose Juarez, discussed this offer with the Alvarados. The Alvarados accepted and testified at both grand jury and at trial. Fernando and appellant were found guilty. Fernando received a thirty-year sentence, while appellant received sixteen years.

A motion for new trial was filed by appellant's present counsel on the basis of an alleged conflict of interest between the Alvarados and appellant. The motion was overruled.

At the outset, we wish ·to stress how vital it is for a defense attorney not to become entangled in a web of conflicting interests between two or more codefendants. If codefendants' interests conflict, and they are represented by the same attorney, many times the attorney is unable to fulfill his duty of representation to both clients equally. "Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland v. Washington,* 466 U.S. 668, ——, 104 S.Ct. 2052, 2065, 80

L.Ed.2d 674, 694 (1984). Indeed, both the American Bar Association[1] and the State Bar of Texas[2] have given certain guidelines for the defense bar to follow. By following these guidelines, the defense bar would eliminate many of the problems encountered by dual representation. See e.g. *Ex parte McCormick,* 645 S.W.2d 801 (Tex. Cr.App.1983). See also Tague, Multiple Representation and Conflicts of Interest in Criminal Cases, 67 Georgetown L.J. 1075, 1077 (1979). The purpose of the effective assistance guarantee of the Sixth Amendment is to "simply ensure that criminal defendants receive a fair trial." *Strickland,* supra. This is a goal all officers of the court should strive to achieve.

However, just because one attorney may represent more than one defendant in a trial does not necessarily prevent the opportunity of a fair trial for the defendants. Permitting a single attorney to represent codefendants is not per se violative of constitutional guarantees of effective assistance of counsel, *Holloway v. Arkansas,* 435 U.S. 475, 482–83, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978), and the mere assertion of a conflict of interest does not amount to the ineffective assistance of counsel. *Foster v. State,* 693 S.W.2d 412, 413 (Tex.Cr.App.1985). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–47 (1980) (footnote omitted). See also *Calloway v. State,* 699 S.W.2d 824 (Tex.Cr.App.1985); *Foster v.*

1. ABA Standards Relating to the Administration of Criminal Justice, The Defense Function, Sec. 3.5(b), p. 123 (1974):

"Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of

several codefendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to multiple representation."

2. See Supreme Court of Texas, Rules Governing the State Bar of Texas, Art. XII, Sec. 8 (Code of Professional Responsibility) DR 5–105 (1971). See also State Bar of Texas, Ethical Considerations on Code of Professional Responsibility EC 5–17 (1972).

*State,* supra; *Gonzales v. State,* 605 S.W.2d 278, 282 (Tex.Cr.App.1980). Thus the issue is whether or not there was an actual conflict of interest between the interests of appellant and those of the Alvarados.

■ We hold that there was no actual conflict of interest. Appellant had made an extrajudicial confession and from the outset, his defense was based upon a theory of self-defense. A self-defense charge was given to the jury. The version of the events given by the "cholos" who testified was exactly opposite to those of the appellant. The "cholos" testified that there was no provocation on their part that initiated the fight. However, it was appellant's and Fernando's position that the "cholos" began the fight by throwing rocks and bottles at Fernando's passing car. It was also appellant's and Fernando's position that the "cholos" attacked the car after it hit the cinder block wall. The testimony of the Alvarados bolstered their version of the facts.[3] The only significant divergence between the testimony of the defense and the Alvarados was whether Saul Alvarado had actually stabbed Sierra. Since appellant was accused of hitting the deceased in the head with a baseball bat, and not stabbing the deceased, then there was no conflict between the testimony of the Alvarados and appellant.

The rationale given by the Supreme Court of the United States for a reversal where there is a conflict of interest supports our finding:

"Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel ... from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied."

*Holloway v. Arkansas,* supra, 435 U.S. at 489–90, 98 S.Ct. at 1181, 55 L.Ed.2d at 438. As stated above, the district attorney's office approached the Alvarados and made the motion for a grant of immunity from prosecution. Their attorney at this time appears from the record not to have solicited this grant of immunity, and acted only in an advisory capacity to the Alvarados. Therefore, no conflict arose from the inability of the defense counsel to make recommendations for appellant, because the district attorney's office, through its investigation of the case, made the offers of immunity to the Alvarados. Ms. Sanders testified at the hearing on the motion for new trial that, since the testimony of the Alvarados corroborated the testimony of appellant, she felt that there were no problems with the admission of evidence.[4] In essence, there is nothing from the record that reveals to us that there was a conflict between the testimony of the Alvarados and that of appellant. In short, the testimony of the Alvarados almost wholly substantiated appellant's version of the events, thus there was no conflict. See e.g., *Glasser v. U.S.,* 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680, 710–11 (1942) (Frankfurt-

---

**3.** On cross-examination by the prosecuting attorney, appellant testified as follows:
"Q. What [Saul and Oscar Alvarado] were testifying to, that is the truth?
"A. Yes, sir."

**4.** Ms. Sanders testified as follows:
"Q. Ms. Sanders, was the testimony of the Alvarado brothers at the trial different from what they told you before?
"A. In some small ways.
"Q. Nothing major at all?
"A. No I didn't feel there were too many major differences. Their accounts of what basically went on were pretty much the same."

er, J., dissenting) ("A common defense often gives strength against a common attack.").

The judgment of the Court of Appeals is affirmed.