Clifford Wayne BECK and Frank Leroy Frieholtz, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 13–85–561–CR, 13–85–562–CR.

Court of Appeals of Texas, Corpus Christi.

Oct. 8, 1987.

**518**

Gus A. Saper, Houston, Larry R. Froelich, Fayetteville, Ark., Sheldon Weisfeld, Brownsville, for appellants.

Ben Euresti, Jr., Brownsville, for appellee.

Before DORSEY, UTTER and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

Appellants, Frank Leroy Frieholtz (Cause No. 13–85–561–CR) and Clifford Wayne Beck (Cause No. 13–85–562–CR), were jointly charged and convicted by a jury of illegal investment in a controlled substance, phentermine. The trial court sentenced Frieholtz to twenty-five years' imprisonment and imposed a $50,000.00 fine. Beck was sentenced to fifteen years' imprisonment and given a $50,000.00 fine. No brief has been filed by the State in either cause.

Although appellants bring their appeals separately, these causes are considered together for purposes of appeal.

Frieholtz brings twelve points of error; Beck asserts five points of error.

By their first points of error, both appellants complain of the sufficiency of the evidence to sustain their convictions, but attack the evidence from different angles.

Appellant Beck asserts that the evidence is insufficient because the State failed to prove phentermine was purchased. Frieholtz asserts that the evidence fails to prove either: (1) that he knew or believed that phentermine was involved; or (2) that he intended to further the commission of the offense of aggravated delivery of phentermine. We disagree with both appellant's contentions.

In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

The first count of the indictment states that, on or about June 19, 1985, each appellant:

did then and there unlawfully, intentionally and knowingly finance and invest funds he knows and believes are intended to further the commission of the offense of aggravated delivery of a controlled substance to wit, *PHENTERMINE.*

The indictment also included a second count, possession of marihuana, but the State elected to go to the jury on only the first count in the indictment.

A person commits the offense of illegal investment under Tex.Civ.Stat.Ann. art. 4476–15 § 4.052(a)(2) (Vernon Supp.1987) if the person, knowingly or intentionally:

> (2) finances or invests funds he knows or believes are intended to further the commission of an offense listed in Subdivision (a)(1) of this subsection.

The applicable offense of the above-mentioned subdivision (a)(1) is § 4.032(c):

> (c) A person commits an aggravated offense if the person commits an offense under Subsection (a) of this section and the amount of the controlled substance manufactured, delivered, or possessed with intent to manufacture or deliver is, by aggregate weight, including any adulterants or dilutants, 200 grams or more.

Subsection (a) states:

> (a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 3 or 4.

Phentermine is included in Penalty Group 3 under Sec. 4.02(d)(9).

■ To commit the offense in the instant case, therefore, one must: 1) knowingly or intentionally finance or invest funds; 2) he knows or believes are intended to further the commission of; 3) the delivery of 200 grams or more of phentermine.

It is not necessary that appellants actually receive or purchase 200 grams or more of phentermine to be convicted of illegal investment; they need only to knowingly invest funds *believing* that those funds would further the delivery of 200 grams or more of phentermine.[1]

■ The evidence reflects that appellants believed the pills they were purchasing contained phentermine, and believed that they were purchasing a quantity of 200 grams or more.

Police informant Esteban de Ases testified that he first met appellant Beck at a mechanic shop in Edinburg. At that time Beck was looking for some "blue pills," and Beck asked de Ases to find some for him to purchase. After several telephone conversations, de Ases made arrangements with Beck, by telephone, in the presence of narcotics investigator Tony Garcia, to exchange 50,000 pills at thirty-five cents per pill. Officer Garcia was identified to Beck as a supplier of drugs.

On June 18, 1985, Beck telephoned officer Garcia and in that taped conversation, Beck, Frieholtz, and Garcia discussed the terms of the transaction. They agreed that Beck and Frieholtz would exchange $17,500 for 50,000 pills; Beck specified that he wanted the "Blue 904s;" but that if Garcia had some "yellow capsules," then those or the blue ones would do, as long as the pills were 904s. Beck made it clear that appellants were only interested in the yellow and blue 904 pills, contained in cellophane packages, or "blister packets." They agreed to meet at the Holiday Inn Motel in Harlingen on June 19, 1985 to purchase the pills.

Officer Garcia and Investigator George Olivo met both appellants at the Holiday Inn Motel Lounge at approximately 10:25 p.m. on June 19, 1985, and went to Frieholtz's hotel room. Frieholtz removed a money belt from around his waist, containing $17,500.00 in United States currency. While Garcia counted the money, Olivo left the room to get the controlled substance.

Upon Olivo's return, Garcia gave Frieholtz "a package containing what he was looking to purchase, the item of 904 amphetamine," and he gave Beck "a package of pills, methquaaludes, which he wished to inspect at that time." Garcia "handed them the merchandise and they handed me the money." Garcia stated that he had approximately 100 Ionamin 904 pills, and that he showed appellants the "real thing,"

---

**1.** *See Stewart v. State,* 718 S.W.2d 286 (Tex. Crim.App.1986). (To sustain a conviction for delivery of a controlled substance, it is not necessary that the substance actually delivered be a controlled substance. The offense is complete when one *offers* to sell what he states is a controlled substance. [Emphasis in original] ).

they examined them and agreed to buy them, and paid for the pills. Garcia further testified that the $17,500.00 was "to purchase 50,000 Ionamin 904s, either blue or yellow," that "Ionamin" is a trade name for phentermine, and that the "blues and yellows" both contain phentermine.

A DPS chemist, Steve Robertson, testified that he had eight and one-half years experience in analyzing phentermine pills, and that when he analyzes a pill, he can determine whether it contains phentermine. Robertson testified that Ionamin 904 tablets come in blue or yellow pill form, and from his experience, the pills in either color always contain phentermine.

Robertson estimated that in his examination of Ionamin capsules, it would take three capsules to get one gram of powder, so that 50,000 pills would contain over 16,-000 grams of powder. However, the capsules are marked as containing 30 milligrams of phentermine, so that it would take 33 pills to get one gram of pure phentermine. The jury could conclude, therefore, that 50,000 pills would contain approximately 16,000 grams of powder or 1,500 grams of phentermine.

Although Robertson did not examine the pills delivered by the officers to the appellants, it is clear that the parties agreed on the transfer of "blue or yellow 904s," that investigator Garcia delivered Ionamin 904s, and that Ionamin 904 pills contain the controlled substance phentermine. The jury could reasonably conclude that "blue or yellow 904s" referred to Ionamin 904 pills, and that the parties therefore contemplated the transfer of the controlled substance phentermine. The amount of phentermine actually delivered is not critical to the State's case. We find sufficient evidence that appellants committed the offense charged. We overrule appellants' first points of error.

By his second point of error, Frieholtz argues that his representation by the same retained counsel as his co-defendant requires the reversal of his conviction because such co-representation created an actual conflict of interest affecting his representation.

■ There was no objection to the dual representation at trial. On appeal, appellant Frieholtz has not shown how the alleged conflict actually affected the adequacy of his representation, but merely speculated in his brief how his defense could have been different had he been represented by separate counsel. We note that the representation by one attorney of more than one defendant in a criminal trial does not necessarily prevent the opportunity of a fair trial for the defendants. *Almanzar v. State*, 702 S.W.2d 653, 655 (Tex.Crim. App.1986). Permitting a single attorney to represent co-defendants is not per se violative of constitutional guarantees of effective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 482–83, 98 S.Ct. 1173, 1177–78, 55 L.Ed.2d 426 (1978).

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 62 L.Ed.2d 333 (1980), the Supreme Court held that when no objection to an alleged conflict of interest is raised at trial the defendant must show an actual conflict which adversely affected his lawyer's performance. The court in *Calloway v. State*, 699 S.W.2d 824, 829 (Tex.Crim. App.1985), emphasized that, in *Cuyler*, the Court made clear that "absent special circumstance trial courts may assume either that multiple representation entails no conflict of interest or that the lawyer and his clients knowingly accept such risk of conflict as may exist." The mere showing of a possible conflict of interest is not sufficient on appeal to prevail on a claim of ineffective assistance of counsel.

■ Frieholtz argues that counsel's representation prevented him from calling co-defendant Beck to testify on his behalf without prejudicing Beck, and that counsel "certainly could not attempt to negotiate a plea agreement for either client in exchange for testimony for the State without causing great prejudice to the other client." Frieholtz further claims that any defense counsel may have tried to establish for him could only have prejudiced Beck, and therefore counsel was "forced" to bind him to the entrapment defense that he was unsuccessful in proving. Frieholtz asserts that, even if he and Beck had been tried sepa-

rately, counsel still would not have been able to negotiate a plea agreement or been able to call one to testify on behalf of the other, because of the dual representation and obligation to each client.

Frieholtz's arguments invite us to speculate on possible conflicts, but there is no evidence that any actual conflict existed, or that Frieholtz did not voluntarily accept these possible conflicts.

Here, as the court found in *Ferguson v. State,* 639 S.W.2d 307, 311 (Tex.Crim.App. 1982), and *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App.1981), Frieholtz's contention of ineffective assistance of counsel is not supported by the record. Frieholtz's second point is overruled.

By points of error three through seven, Frieholtz asserts that he was denied the effective assistance of counsel due to: (1) his attorney's failure to pursue his motion to suppress; (2) his counsel's failure to move for a severance "because of an actual conflict of interest inherent in a joint trial"; (3) the failure of counsel to move for a severance "that the co-defendant was entitled to as a matter of law"; (4) counsel's failure to withdraw as attorney of record for either appellant because of "an actual conflict of interest in representation of both parties"; and (5) his counsel's failure to object to the jury charge as being a comment on the weight of the evidence.

By his second point of error, Beck claims ineffective assistance of counsel by the cumulative effect of his attorney's: (1) failure to move for a severance; (2) failure to withdraw as counsel due to the actual conflict of interest between appellants' (3) failure to call Beck to testify; and (4) failure to pursue a motion to suppress or object to the introduction of "highly suspect" evidence.

To obtain the reversal of a conviction based on ineffective assistance of counsel, appellant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that this deficient performance prejudiced the defense. *Ex parte Wilson,* 724 S.W.2d 72, 73 (Tex. Crim.App.1987). The right to effective assistance of counsel does not mean errorless counsel, but merely ensures the right to "reasonably effective assistance." *Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim.App.1984). Counsel's representation is not to be judged by hindsight, or isolated acts or omissions, but by "the totality of the representation." *Moore v. State,* 694 S.W.2d 528 (Tex.Crim.App.1985).

In examining Frieholtz's points of error, we initially overrule points four and six due to our determination that no actual conflict of interest is shown by the record.

■ Both appellants submit that counsel's failure to move for a severance rendered his assistance ineffective. According to Tex.Code Crim.Proc.Ann. art. 36.09 (Vernon 1981), when two defendants are jointly indicted for the same offense, they may be tried jointly or separately at the discretion of the court. The statute further provides that, in cases in which it is made known to the court that a previous conviction is admissible against one defendant or that a joint trial would prejudice either defendant, then upon a timely motion to sever and evidence introduced thereon, the court shall order a severance as to the defendant whose joint trial could prejudice the other defendant.

Both appellants assert that, because Beck had no prior convictions and Frieholtz had several, both appellants had "an absolute right to a separate trial if their attorney had requested one." The mere existence of a co-defendant's prior convictions does not, however, entitle a defendant to an automatic severance, as the defendant must still offer evidence in support of the motion. *Robinson v. State,* 449 S.W.2d 239, 240 (Tex.Crim.App.1969). *See also Mulder v. State,* 707 S.W.2d 908, 915 (Tex. Crim.App.1986); *Robertson v. State,* 632 S.W.2d 805, 808 (Tex.App.—Houston [14th Dist.] 1982, no pet.).

■ Moreover, it is not Frieholtz's right to a severance, but Beck's right that is in question. The defendant with the prior convictions is not entitled to complain of the lack of a severance, but it is the defendant with no prior convictions whom article

36.09 was designed to protect. Frieholtz cannot assert Beck's right to a severance.

Finally, a review of the record indicates that, during the guilt/innocence phase, the jury was never exposed to evidence of Frieholtz's prior convictions. The only mention of his convictions came during the punishment phase, where both appellants elected for the court to·assess punishment. The State's mention of Frieholtz's prior convictions at the punishment phase was admissible. The trial court was entitled to consider prior final convictions in assessing punishment. *Elder v. State*, 677 S.W.2d 538 (Tex.Crim.App.1984); Tex. Code Crim.Proc.Ann. art. 37.07, § 3(a) (Vernon Supp.1987). Frieholtz's receipt of a longer sentence than Beck indicates that the trial court did consider Frieholtz's prior convictions in assessing his punishment, which it was entitled to do.

Counsel's failure to file a motion for severance did not render his assistance to Frieholtz ineffective. Frieholtz's fifth point is overruled.

By point of error three, Frieholtz claims that his attorney's failure to pursue his motion to suppress evidence filed on August 30, 1985, and failure to attempt to suppress State's Exhibit No. 3, phentermine discovered in Beck's truck during an inventory search, amounted to ineffective assistance of counsel. This phentermine did not serve as the basis of this prosecution. Appellant's motion was a general request to suppress "all tangible evidence seized on or about June 19, 1985 ... including ... money and marijuana." No ruling on the motion is evidenced in the record. Counsel's failure to pursue the motion and develop the circumstances surrounding the seizure results in only a scanty record on this matter. However, from the circumstances appearing in the record, it appears an inventory of Beck's truck following his arrest would have been permissible. Counsel may well have reached this same conclusion and decided not to pursue the motion. Even if counsel inadvertently failed to pursue the motion, this does not ordinarily reflect ineffective assistance. *Ewing v. State*, 549 S.W.2d 392, 395 (Tex.

Crim.App.1977). We overrule Frieholtz's third point.

By his seventh point, also argued in point twelve, Frieholtz asserts that the jury charge on entrapment was a comment on the weight of the evidence in that it assumes his guilt. Appellant Frieholtz entered a plea of not guilty and claims that the charge on entrapment erroneously assumes his guilt and constitutes a comment on the weight of the evidence.

The charge given to the jury on entrapment was as follows:

You are instructed that entrapment is a defense to prosecution that the persons charged engaged in the conduct charged against them because they were induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute such entrapment. The term "law enforcement agent" includes personnel of the State and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

Now if you find from the evidence, or if you have a reasonable doubt thereof, that on the occasion in question the Defendants, Clifford Wayne Beck and Frank Leroy Frieholtz, engaged in the conduct charged against them in the indictment because they were induced to do so by a law enforcement agent or agents, using persuasion or any other means likely to cause a person to commit such offense, then you will find the Defendants not guilty.

If, however, you find from the evidence beyond a reasonable doubt that on the occasion in question the said law enforcement agent did not induce the Defendants to engage in the charged conduct, either by persuasion or by any other means likely to cause them to commit such offense, and that the Defendants, nevertheless, engaged in said charged conduct of their own volition and free will, then in such event, there has

been no "entrapment", and you will be guided by these instructions in this charge without regard to any defense of entrapment.

Under Tex.Penal Code Ann. § 8.06(a) (Vernon 1974), entrapment is a defense "to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

■ Contrary to Frieholtz's argument, the defense of entrapment is not available to one who denies he committed the offense charged, *Stephens v. State*, 522 S.W.2d 924 (Tex.Crim.App.1975), but such defense necessarily assumes that the act charged was committed. *Warren v. State*, 565 S.W.2d 931 (Tex.Crim.App.1978). We find no error, therefore, in the trial court's instruction. Frieholtz's points seven and twelve are overruled.

Returning to Beck's second point regarding his claim of ineffective assistance of counsel, as discussed above, we have determined that Beck was not entitled to a severance as a matter of law. In addition, Beck has failed to prove an actual conflict of interest between appellants.

Beck, like Frieholtz, argues that counsel's failure to withdraw or move for a severance caused a direct conflict of interest between appellants. Yet Beck speculates as to why he did not testify at trial, asserting that the record "does suggest the probable reason was a conflict of interest between the co-defendants." He argues that if counsel had moved to sever, he could have minimized Frieholtz's involvement in the case without prejudicing Beck's case by not calling Beck to testify. Beck believes that the actual conflict of interest was over whether he should have testified, and his failure to testify on his own behalf when his defense was entrapment seriously prejudiced his case.

■ With regard to his failure to testify, we will not speculate, as appellant has in his brief, as to why he was not called and what his testimony might have been. Such speculation is an attempt to second-guess appellant's counsel's trial strategy, which we will not do. *Moore v. State*, 694 S.W.2d at 531; *Cannon v. State*, 668 S.W. 2d 401 (Tex.Crim.App.1984).

Finally, Beck also asserts that trial counsel's failure to object or move to suppress the phentermine which was admitted as State's Exhibit No. 3 contributed to his ineffective assistance. As noted under the discussion of Frieholtz's third point, this phentermine did not serve as the basis for the prosecution. While the circumstances surrounding its seizure may have been more fully developed had counsel pursued his motion, we do not find that trial counsel rendered ineffective assistance of counsel. Beck's second point is overruled.

■ It is important to note that appellants' counsel offered a vigorous defense at trial that was based on the entrapment by officers and the informant. Appellants' counsel filed several pretrial motions, requested a list of State's witnesses and requested favorable defensive evidence. He filed a motion for the trial court to determine whether appellants were entrapped as a matter of law, which was carried with the case. He vigorously cross-examined the State's witnesses Garcia and de Ases regarding their contact with appellants. After the State rested, appellants' counsel moved for an instructed verdict, asserting that the indictment was fundamentally defective because it did not state the amount of controlled substance in issue.

Appellants' trial counsel called two witnesses, Francisco Lara, and appellant Beck's wife, Mary May Beck. Lara testified that he had done business with Beck but refuted de Ases' testimony, discrediting de Ases and denying that he had ever sold pills to Frieholtz or looked for pills for Beck.

Mary, Beck's wife, testified that she and her husband started receiving telephone calls in May, 1985, from a "Steve" who kept trying to sell them pills. She stated that he called several times, that she and

Beck felt entrapped and, therefore, finally succumbed to his offer.

Appellant's trial counsel objected several times during trial, cross-examined and re-cross-examined the State's witnesses, and presented a defense on appellants' behalf. Although he could have offered additional objections or proof, we do not find that his representation amounted to ineffective assistance.

By his eighth point, Frieholtz claims that he was deprived of his right to due process due to the "outrageous" conduct of law enforcement agents. The "outrageous" conduct of which he complains is the sale, by agents, of the pills for which he and Beck were convicted of purchasing. Frieholtz asserts that Officer Garcia committed the offense of distribution of a controlled substance in order to charge appellants with illegal investment and therefore the conviction should be reversed because "the defense of reprehensible police conduct is established by the record as a matter of law."

Appellant cites *Satterwhite v. State*, 697 S.W.2d 774 (Tex.App.—Corpus Christi 1985, pet. ref'd) and attempts to distinguish the facts of this case from this case from those in *Satterwhite*. However, as we noted in *Satterwhite*, although courts in other jurisdiction have dismissed indictments because of police conduct that reaches a "demonstrable level of outrageousness," appellant Frieholtz has referred this Court to no Texas case where police conduct was found unconscionable. *Satterwhite*, 697 S.W.2d at 776.

We do not find the police activity in this case, albeit subject to a defense of entrapment, to be unconscionable. We overrule Frieholtz's eighth point of error and Beck's fourth point of error.

Beck adopts Frieholtz's eighth point as his fourth point of error. We, therefore, simultaneously overrule Beck's fourth point of error.

Beck, by his third point, and Frieholtz, by his ninth point, claim error in allowing the State's tape recording admitted into evidence without satisfying the requirements of Tex.Code Crim.Proc.Ann. art. 18.20, § 14(a) (Vernon Supp.1987). Beck again effectively adopts Frieholtz's argument as his own.

As we recently decided under similar facts in *Esterline v. State*, 707 S.W.2d 171 (Tex.App.—Corpus Christi 1986, pet. ref'd), the wiretap statute, article 18.20, does not apply to a tape recording of telephone conversations between an informant and a defendant, and a court order is not required for the tape to be admissible where the informant consented to the taping of his conversations with the defendant, although the defendant did not consent to the recording. Here, the record reflects the informant de Ases' consent to the recording of his conversations with appellants. Beck's and Frieholtz's consent was not required. *Esterline*, 707 S.W.2d at 173. We overrule Beck's third point and Frieholtz's ninth point of error.

Frieholtz, by his tenth point, claims he was denied a fair trial because the State used a "non-disclosed transcription of the tape recordings to inject new and harmful unproven facts during cross-examination and closing argument." The transcription was not introduced in evidence, but the tape recordings were.

Appellant did not obtain a ruling on his objection to the use of the transcript, nor did he object to the State's closing argument at trial. Appellant has not preserved his error on this point. *Green v. State*, 682 S.W.2d 271, 275 (Tex.Crim.App.1984); *Fuentes v. State*, 664 S.W.2d 333, 336 (Tex. Crim.App.1984). Moreover, we do not find, absent an objection to the State's argument, that the argument amounted to such prejudicial error that it could not have been cured by an instruction to disregard. *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim.App.1985).

Frieholtz included examples of the prosecutor's "injection of unproven facts" in a footnote in his brief. The examples to which appellant refers were contained in the taped conversations. Although we do not agree with the State's action in withholding the transcription of the taped con-

versations and the tape recording from appellants prior to trial, we do not find the State's reference to the transcription harmful error. Frieholtz's tenth point of error is overruled.

By point of error eleven (Beck's point of error five), Frieholtz claims that article 4476-15, § 4.032(a) is unconstitutionally vague. Appellant argues that the language of the statute fails to adequately set forth what it is that one is prohibited from possessing with the requisite intent. He asserts that, any way the language of § 4.032(a) is construed, it "clearly does not inform men of common intelligence as to what they should not possess accompanied by the requisite intent." Appellant cites no authority in support of his argument.

■ We disagree with appellant's reading of the statute. It is clear to this Court that the "possession with intent to" portion of § 4.032(a) refers to the possession of a controlled substance with the intent to manufacture or deliver the controlled substance. *See Welch v. State*, 680 S.W.2d 834, 835–36 (Tex.App.—Houston [1st Dist.] 1984, pet ref'd). Under the statute, one is prohibited from possessing a controlled substance. We do not find the statute to be unconstitutionally vague. Moreover, appellants were convicted of illegal investment with the intent to further the delivery of phentermine, thus referring to the first part of § 4.032(a) regarding the delivery of a controlled substance. The portion of § 4.032(a) to which appellants refer does not involve the offense for which appellants were convicted.

Appellant Frieholtz's eleventh point and Beck's fifth point of error are overruled.

Finally, we note that Beck filed a supplemental statement of facts and supplemental brief in support of his post-trial motions. On March 24, 1986, a hearing was held to consider his motions to reopen sentencing, to reopen the record, his motion for new trial and motion for permission to file an out-of-time motion for new trial, and motions regarding objections to the record. A thorough review of the supplemental brief and statement of facts does not change our disposition of this case.

Having disposed of all of appellants' points, we AFFIRM the judgment of the trial court.