L.C. RICHARDSON, Claude Biggins, Jr., and Lonnie Lee Jordan, Appellants,

v.

The STATE of Texas, Appellee.

No. 05–88–01484–CR, 05–88–01472–CR and 05–88–01471–CR.

Court of Appeals of Texas, Dallas.

April 10, 1990.

Rehearing Denied May 15, 1990.

Edgar A. Mason, Donald J. Driscoll, Dallas, for appellants.

Don Davis, Robert P. Abbott, Dallas, for appellee.

Before STEWART, BURNETT and WHITTINGTON, JJ.

OPINION

BURNETT, Justice.

A jury convicted appellants, L.C. Richardson, Claude Biggins, Jr., and Lonnie Lee Jordan, of illegal investment of funds to further the commission of the offense of possession of cocaine. The trial court assessed punishment against Richardson, enhanced by two prior convictions, at life imprisonment. The trial court assessed punishment against Biggins, enhanced by two prior convictions, at life imprisonment. The trial court assessed punishment against Jordan, enhanced by two prior convictions, at life imprisonment. Although appellants bring their appeals separately, we will consider the cases together for purposes of appeal.

Richardson asserts eight points of error. Biggins asserts nine points of error. Jordan asserts four points of error. All three appellants assert in their first point of error that the evidence was insufficient to support their convictions. We sustain each appellant's first point of error. Accordingly, we reverse and order a judgment of acquittal for all three appellants.

In reviewing the sufficiency of the evidence, an appellate court looks at the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Marroquin v. State,* 746

S.W.2d 747, 750 (Tex.Crim.App.1988). Viewed in its most favorable light, the testimony of Dallas Police Officer Frank Perez reveals the following. Officer Perez, working in an undercover capacity, was introduced to Jordan by a confidential informant in early June, 1988. Officer Perez testified that Jordan wanted to buy cocaine from him. He told Jordan that he could sell Jordan a kilo of cocaine for $16,000. He subsequently met with Jordan four or five times in the next two weeks.

On June 21, 1988, Officer Perez met Jordan, and they drove around in south Dallas. Jordan directed Officer Perez to a location where Officer Perez stopped the car. Officer Perez observed Richardson and Biggins talking to each other on the sidewalk. Jordan got out of the car and talked to Richardson and Biggins. Jordan brought Richardson over to the car. Richardson told Officer Perez that he needed some "good" cocaine. Officer Perez told Richardson that he would sell Richardson two kilos of cocaine for $32,000. Richardson replied that he was very interested and that he needed some time to get some money together. Officer Perez did not talk to Biggins at this meeting. However, while Officer Perez and Richardson discussed a possible deal, Richardson indicated to Officer Perez that Biggins was Richardson's "partner in the drug business." Officer Perez and Jordan then left.

On June 22, 1988, Officer Perez talked with Jordan on the phone. Officer Perez testified that Jordan told him that Richardson was still getting some money together and that a deal could be made that day or the next day. On June 23, 1988, Jordan phoned Officer Perez and told him that Richardson and another person were ready to purchase one kilo of cocaine for $16,000. Officer Perez and Jordan scheduled a meeting that night at a parking lot of a Denny's restaurant in Dallas. Officer Perez arrived at the parking lot around 9:15 p.m.

Jordan, Richardson, Biggins, and a small child arrived in a truck shortly thereafter and parked near Officer Perez's car. Officer Perez walked toward the truck. Jordan got out of the truck and approached Offi-

cer Perez. Jordan asked Officer Perez if he had the cocaine. Officer Perez responded that he did. Officer Perez then testified that Jordan said that he hoped the transaction worked out well because he "had some money invested in [the deal]." Officer Perez and Jordan then walked over to the truck. Richardson, Biggins, and the small child were still sitting in the truck. Richardson asked Officer Perez if he had the cocaine. Officer Perez told Richardson that he had the cocaine and asked Richardson if he had the money. Biggins pulled out a brown bag and handed it to Richardson. Richardson opened the bag. Officer Perez then "stuck [his] hand in [the bag], and pulled out some money ... [and] put [the money] back in [the bag]." Officer Perez also testified that Richardson "showed" him some money, but never gave him any money. Officer Perez testified that Biggins told him not to worry because "all the money was there."

Officer Perez then told appellants that he was going to his car to get the cocaine. Officer Perez testified that when he walked away from the truck, Richardson retained possession of the bag containing the money. Jordan walked with Officer Perez to the car. Officer Perez opened the trunk of his car and retrieved a purple container. Jordan never touched the container. Soon thereafter, other police officers who were monitoring the transaction responded to Officer Perez's prearranged arrest signal, moved in, and arrested appellants. The brown bag that was in the truck was found to contain $15,620.

The indictments against Richardson, Biggins, and Jordan state that, on or about June 23, 1988, each appellant:

did knowingly and intentionally finance and invest funds to-wit: $15,620.00 current money of the United States of America, and said defendant knew and believed that said funds were intended to further the commission of the offense of possession of cocaine in an amount by

aggregate weight including any adulterants or dilutants of 28 grams or more.

Appellants were convicted under section 4.052 of former article 4476–15 (Texas Controlled Substances Act) of the Texas Revised Civil Statutes, which provided:

ILLEGAL INVESTMENT. (a) A person commits an offense if the person knowingly or intentionally:

(1) expends funds he knows are derived from the commission of an offense under Section 4.03(c), 4.031(c), 4.032(c), 4.04(c), 4.041(c), 4.042(c), 4.043(c), 4.05(c), or 4.051(c) of this Act; or

(2) finances or invests funds he knows or believes are intended to further the commission of an offense listed in Subdivision (a)(1) of this subsection.

Act of May 30, 1983, ch. 425, § 15, 1983 TEX.GEN.LAWS 2361, 2391–2392.[1] The offense listed in 4.052(a)(1) applicable to appellants is section 4.04(c), which makes it an offense to knowingly or intentionally possess over twenty-eight grams of certain controlled substances, including cocaine. Id., § 9, 1983 TEX.GEN.LAWS at 2379–80.[2] Thus, to commit the offense in the case before us, appellants must: (1) knowingly or intentionally finance or invest funds; (2) know or believe the funds are intended to further the commission of; (3) the possession of over twenty-eight grams of cocaine. The appellants need not actually receive more than twenty-eight grams of cocaine to be convicted of illegal investment. Appellants need only knowingly or intentionally finance or invest funds from which they believe they will receive more than twenty-eight grams of cocaine.

The record reflects that appellants knew the funds were to be used to acquire more than twenty-eight grams of cocaine. The only issue in the cases before us, then, is whether appellants "invested" or "financed" funds to further the commission of the offense of possession of cocaine.

---

1. The entire Texas Controlled Substances Act has been repealed. Former section 4.052 has been replaced by a provision in the new Health and Safety Code. See TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon Pamph. 1990).

2. See TEX.HEALTH & SAFETY CODE ANN. § 481.115 (Vernon Pamph. 1990).

Texas courts have addressed illegal investment cases infrequently. In *Moffett v. State*, 716 S.W.2d 558 (Tex.App.—Dallas 1986, pet. ref'd), this Court held that the defendant invested funds in the manufacture of amphetamine[3] when the defendant spent his own money to purchase precursor chemicals and items of property for use in the manufacture of a controlled substance. *Moffett*, 716 S.W.2d at 565. Another case involving an illegal investment is *Beck v. State*, 741 S.W.2d 516 (Tex.App.—Corpus Christi 1987, pet. ref'd). *Beck* involved the investment of funds to further the delivery of a controlled substance.[4] The facts of *Beck* are more similar to the facts of the case before us than to those in *Moffett* because the underlying transaction in *Beck* involved the obtaining of the actual substance rather than an investment in precursor chemicals and equipment to manufacture the controlled substance. In *Beck*, two defendants met two undercover police officers at a hotel to purchase phentermine, a controlled substance. One of the defendants handed an undercover officer cash in the amount of $17,500 as the officer handed the defendant the drugs. The court of appeals held that the defendants committed illegal investment. *Beck*, 741 S.W.2d at 520.

While the general transaction in *Beck* is similar to the case before us, there is one major distinction. In *Beck*, one of the defendants "handed" the undercover officer money for the controlled substance. In the case before us, appellants did not transfer the money to Officer Perez. Officer Perez's testimony, viewed in the light most favorable to the verdict, reveals only that he touched the money and briefly held some of it. When Officer Perez walked away from the truck to his car, the money remained in the truck.

While section 4.052(a)(2) of former article 4476–15 allows convictions of a party merely "bankrolling" *others* to commit the offenses listed in section 4.052(a)(1), section 4.052(a)(2) also reaches a party "bankrolling" his *own* commission of an offense listed in section 4.052(a)(1). *See Moffett*, 716 S.W.2d at 564. However, in either situation, the party must "finance" or "invest" funds. Appellants argue that they did not "invest" or "finance" funds with Officer Perez because they never transferred him any money. The State contends, however, that appellants, by meeting Officer Perez at the parking lot to purchase cocaine, possessing an amount of money just less than the agreed upon purchase price and showing Officer Perez some of it, financed or invested funds with Officer Perez.

Section 4.052(a)(2) does not define the terms "invest" or "finance." Since the legislature does not define these terms, we must presume that the legislature intended the terms to have their natural, ordinary, and familiar meaning. TEX.GOV'T.CODE ANN. § 311.011(a) (Vernon 1988); *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App. [Panel Op.] 1979). A dictionary definition of "finance" is: "to raise or provide the funds or capital for." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 463 (1985). The relevant definition of "invest" is: "to commit (money) in order to earn a financial return." *Id.* at 637. Commit is defined as: (i) "to pledge or assign to some particular course or use;" or (ii) "to obligate or pledge oneself." *Id.* at 265. Pledge means "to bind." *Id.* at 903. Assign is defined as: "to transfer (property) to another especially in trust or for the benefit of creditors." *Id.* at 109. Obligate is defined as: "to bind legally or morally." *Id.* at 814.

We hold that, in the context of section 4.052(a)(2), there must be a transfer of

---

**3.** Section 4.032(c) of former article 4476–15 of the Texas Controlled Substances Act made it an offense to knowingly or intentionally manufacture, deliver, or possess with intent to manufacture or deliver certain controlled substances. *See* Act of May 30, 1983, ch. 425, § 8, 1983 TEX.GEN.LAWS 2361, 2377–78 (current version at TEX.HEALTH & SAFETY CODE ANN. § 481.114) (Vernon Pamph.1990).

**4.** This was an offense under section 4.032(c) of former article 4476–15 of the Texas Controlled Substance Act. *See* Act of May 30, 1983, ch. 425, § 8, 1983 TEX.GEN.LAWS 2361, 2377–78 (current version at TEX.HEALTH & SAFETY CODE ANN. § 481.114) (Vernon Pamph.1990).

funds at some point to satisfy the "finance" or "invest" requirement of the statute. Appellants were one step short of investing or financing funds with Officer Perez. Appellants did not transfer the funds to Officer Perez. At most, Officer Perez touched the money and briefly held it. Officer Perez did not exercise any control over the money.

Thus, while the actions of appellants may have constituted an *attempted* illegal investment, we hold that the evidence is insufficient to support a conviction for the offense of illegal investment by Richardson, Jordan, or Biggins. We sustain the first point of error of each appellant. Accordingly, we reverse and render a judgment of acquittal for all three appellants. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).

Because we hold that the evidence is insufficient to support a finding that appellants financed or invested funds, we need not discuss the other points raised in the appellants' briefs.