STATE of Texas, ex rel., Danny E. HILL,
District Attorney Relator,

v.

Honorable Patrick A. PIRTLE,
Judge, Respondent,

v.

The STATE of Texas, Appellee.

No. 71,596.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 14, 1994.

Danny E. Hill, Dist. Atty., Amarillo, Charles Palmer, Asst. Atty. Gen., Austin, for relator.

Don Dean, Amarillo, Edwin J. Tomko, Dallas, John W. Sweeney, Ft. Worth, Charles Blau, Kerry Fitzgerald, Dallas, Selden B. Hale, III, Mallory Halloway, Nancy Stone, Amarillo, Tim Evans, Fort Worth, Charles Rittenberry, Warren Clark, Patrick E. Pirtle, Judge Amarillo, for respondent.

Robert Huttash, State's Atty., Austin, for State.

## OPINION

WHITE, Judge.

Relator Danny E. Hill, district attorney of the 47th Judicial District, seeks a writ of mandamus from this Court directing respondent Patrick A. Pirtle, Judge of the 251st District Court of Potter County, to vacate an order prohibiting two assistant attorneys general from serving as assistant district attorneys in certain pending criminal prosecutions. We will conditionally grant the writ.

On October 16, 1991, the Attorney General of Texas, acting on behalf of the State, filed a civil action against Texas Health Enterprises, Inc. (T.H.E.) in the 47th District Court of Potter County. The lawsuit, which was pending at the time this cause was filed and set for submission, sought civil penalties and injunctive relief under state law for alleged unlawful treatment of residents of a T.H.E. nursing home in Potter County. See TEX. HEALTH & SAFETY CODE ANN. § 242.001 et seq. That lawsuit was litigated by the Attorney General's Consumer Protection Division.

On March 27, 1992, the Potter County grand jury returned indictments in the 251st District Court charging T.H.E. and several of its officers and employees (real parties in interest here) with injury to an elderly individual, injury to an invalid, tampering with government records, and misapplication of fiduciary property. See TEX.PENAL CODE ANN. §§ 22.04, 32.45, and 37.10. The criminal charges involve allegations similar, or identical, to those that were the basis of the civil lawsuit.

On November 20, 1992, relator signed a written deputation which appointed assistant attorneys general Jack Else and Rodney Boyles to be relator's "lawful Assistant District Attorneys." That deputation empowered Else and Boyles "to do and perform any and all acts and things pertaining to the Office of said District Attorney in and for the 251st Judicial District." On December 7, 1992, both Else and Boyles signed a sworn affirmation of the oath of office of Assistant District Attorney. In their oaths, Else and Boyles each swore to "faithfully execute the duties of the office of Assistant District Attorney."

Near the time relator signed the deputation, T.H.E. and another of the criminal defendants filed motions in the 251st District Court to prohibit Else and Boyles from serving as Assistant District Attorneys. The motions advanced a variety of legal theories supporting the requested prohibition.

On January 11, 1993, respondent convened an evidentiary hearing on the motions to

prohibit. The undisputed evidence at the hearing established that relator retains ultimate supervising authority over the criminal prosecutions; that he may, at his pleasure, dismiss Else and Boyles from their positions as assistant district attorneys; that the assistant district attorney positions occupied by Else and Boyles are unpaid positions; that Else and Boyles serve in the Attorney General's Medicaid Fraud Control Unit, which is organizationally separate from the Consumer Protection Division; that they are paid by the Attorney General's Office; and that they have no connection with the civil litigation against T.H.E. There was also evidence that the Medicaid Fraud Control Unit shared with the Consumer Protection Division some documents relating to the criminal prosecutions, but there was no evidence as to the number or nature of the documents shared.

Relator also proved at the hearing that he and the permanent members of his staff were involved in conducting the prosecutions. Evidence at the hearing showed that relator had not turned these criminal prosecutions over to Else and Boyles, and then walked away.

It became apparent at the hearing that relator and permanent members of his staff (Mike Meredith and Randy Sims) were going to be involved with Else and Boyles in the business of conducting these criminal prosecutions. At the hearing on the motion to prohibit, Meredith was present with Else and Boyles. During the hearing, Boyles explained to the trial court that Meredith and Sims were present during the grand jury hearings which produced the indictments returned in the 251st District Court, with Meredith being "present during all the grand jury presentations" and having a "fair decision making role." Boyles stated that Meredith made the "arrangements for these hearings to be set this month."

When a proponent began to discuss his motion to prohibit, Meredith stood to inform the trial court of the extent of the actions taken by relator's office on that motion. During the hearing, the proponent called Boyles to the witness stand. Under oath, Boyles testified that he had "discussed many practical and legal problems with the case— with both Hill (relator) and Meredith and I think we had a few discussions with Sims." Boyles explained that relator wanted him and Else to try the case. Later, Boyles testified to explain the control relator had over these criminal prosecutions:

Q (Mr. Fitzgerald): "Why? You can just show up. You have got a law license. You work for the Attorney General's Office. Why do it with a deputation?"

A (Mr. Boyles): "No, I do not believe we can do that. I believe we have to have some showing that we are acting at the request and at the desire of the local prosecutor. I don't believe we have any independent prosecutor authority. I don't think we have that."

Boyles also testified that if relator told him he and Else were going to have to try the case, they would try the case, and if relator told them they would have to leave town and never come back, they "were going to leave town and never come back." From this it can be seen that relator appointed Else and Boyles to assist him in the prosecution of these cases, perhaps even to take the lead in the trial of these cases, but not to completely take over these prosecutions from relator.

At the conclusion of the hearing, respondent orally granted the motions to prohibit on grounds argued by the proponents of the motions. Respondent gave the following justification for his ruling:

"Whenever the Attorney General's Office is involved in civil litigation ... and attempts to involve itself in a criminal prosecution, I find great question with that responsibility.

"... I'm going to rule that the Attorney General has no prosecutorial authority, that the attorneys Else and Boyles are, in fact, Attorneys General. They are not Assistant District Attorneys. Therefore, attorneys Else and Boyles have no prosecutorial authority by virtue of their status as Attorney General.

"The Court further finds that their deputation order is void, it is unconstitutional. It is improperly stated. It is ineffective in that it recites an improper district. There's no authorization from the Potter County commissioners or any other authority and the deputation order is therefore, in the opinion of this Court, void ab initio.

"Because Attorneys Else and Boyles have no prosecutorial authority by virtue of their status as Attorney Generals and because they have no prosecutorial authority by virtue of their deputation, the Court does hereby rule that they shall have no further involvement in this case.

"The Court further finds by way of admonishment to all Counsel, that there are significant conflicts of interest that present significant questions of disciplinary conduct and that counsel should be aware of those in future dealings with regard to this matter."

Respondent issued these findings in a January 28, 1993, written order granting the motion to prohibit.

On January 29, 1993, relator asked this Court for a stay of all proceedings in the criminal prosecutions and a writ of mandamus ordering respondent to vacate his order granting the motions to prohibit. See TEX. R.APP.PROC. 211. On February 5, 1993, this Court stayed the proceedings in the trial court and ordered this case filed and set for submission.

In his application for mandamus relief, relator contends that respondent clearly abused his discretion and acted without legal authority in granting the motions to prohibit, and that relator has a clear legal right to have that order vacated. Relator asserts that (1) he has the right under existing case law to appoint any competent attorney to serve as special prosecutor[1] in a criminal case unless the defendant can show resulting prejudice, and the defendants in the instant criminal prosecution have not shown resulting prejudice; (2) his appointment of Else and Boyles to serve as assistant district attorneys did not violate our state constitution's separation of powers provisions because relator retained plenary authority over the criminal prosecutions; (3) any conflict of interest arising from the appointment of Else and Boyles is a matter solely for relator, and not respondent, to determine; and (4) the written deputation was unnecessary and, therefore, any defects in it are legally irrelevant. Relator argues that he has no other adequate legal remedy because "if respondent's order ... is not withdrawn, relator will be forced to prosecute the criminal cases without the assistance of the assistant attorneys general," who "possess particular expertise in the legal issues involved."

Respondent adopted the answer and brief in opposition to the petition for writ of mandamus that was filed by the real parties in interest. He asserts that his conclusions of law regarding the appointment of Else and

---

1. With all due respect to relator's reference to Else and Boyles as "special prosecutors," we question whether the instant case actually involves the appointment of "special prosecutors" as that term is understood in the laws of this state. Respondent did not appoint Else and Boyles, as he might have in an Art. 2.07 situation. TEX.CODE CRIM.PROC.ANN. Art. 2.07. Outside parties did not privately retain Else and Boyles to serve as special prosecutors. Cf. *Lopez v. State*, 437 S.W.2d 268, at 269 (Tex.Cr.App. 1968); *Ex Parte Powers*, 487 S.W.2d 101, at 104 (Tex.Cr.App.1972); *Davis v. State*, 513 S.W.2d 928, at 931 (Tex.Cr.App.1974); and *Ballard v. State*, 519 S.W.2d 426, at 428 (Tex.Cr.App.1975). Relator also was not surrendering control and management of the prosecution as he would in the event of a conflict of interest.

As an example, a conflict of interest would constitute an exception to a district attorney's statutory obligation to represent the State in all criminal cases. See TEX.CODE CRIM.PROC. ANN. Art. 2.01. In such a case, the responsibility of recusal would lie with the elected district attorney. See *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex.Cr.App.1990). The district attorney would then step aside. That is not the situation in the instant case.

Else and Boyles were not appointed to be independent prosecutors in the criminal prosecution of the real parties in interest, or brought in by outside parties to assist relator. As pointed out in the factual summary above, relator appointed Else and Boyles to be assistant district attorneys in his deputation order. They were to be active, even though not permanent, members of relator's staff.

Boyles are correct. Respondent asserts that relator is not entitled to mandamus relief because (1) his application does not comply with TEX.R.APP.PROC. 121 and contains only "cursory allegations" that "do not provide a sufficient basis for this Court to evaluate the propriety of respondent's order;" (2) a "trial court's decision [not] to allow a special prosecutor to participate in a case is a discretionary act;" (3) the appointment of Else and Boyles as "special prosecutors" is prohibited by the common law doctrine of incompatibility; and (4) the appointment is also prohibited by TEX. CONST. Art. 16, §§ 33 and 40.

## I.

This Court is empowered by Art. V., § 5, of the Texas Constitution to issue writs of mandamus in all criminal law matters. *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581 (Tex.Cr.App.1993). The issuance of the writ is never a matter of right but rests instead in the sound discretion of this Court. *Dickens v. Second Court of Appeals*, 727 S.W.2d 542, at 549 (Tex.Cr. App.1987); *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, at 795 (1941). We have also recognized that mandamus is a drastic remedy, to be invoked only in extraordinary situations. *Perkins v. Third Court of Appeals*, 738 S.W.2d 276, at 284 (Tex.Cr.App.1987). Indeed, "[a] willingness to issue writs of mandamus in less than extraordinary situations would encourage piecemeal litigation and frustrate the efficient administration of justice." *State ex rel Sutton v. Bage*, 822 S.W.2d 55, at 57 (Tex.Cr.App.1992). This cautious view of mandamus also reflects our concern that the writ "not be converted into a judicially created form of open-ended discretionary review procedure for orders not appealable as of right." 3 W. LaFave & J. Israel, *Criminal Procedure* § 26.4(b), at 227 (1984).

Consistent with this view of the mandamus remedy, we have held that it is available only when the relator can establish that he has no other adequate legal remedy and that, under the relevant law and facts, he has a clear legal right to the relief sought. *Braxton v. Dunn*, 803 S.W.2d 318, at 320 (Tex.Cr. App.1991); *State ex rel. Wade v. Mays*, 689 S.W.2d 893, at 898–899 (Tex.Cr.App.1985). Furthermore, as we explained recently in *Buntion v. Harmon*, 827 S.W.2d 945, fn. 2 at 947 (Tex.Cr.App.1992), a relator may be able to demonstrate a clear legal right to relief if the respondent's nominally discretionary act actually constituted an abuse of discretion.

In the instant cause, we hold that relator has no other adequate remedy. He may not appeal respondent's order granting the motions to prohibit under any provision of TEX.CODE CRIM.PROC.ANN. Art. 44.01. See *State v. Moreno*, 807 S.W.2d 327 (Tex.Cr.App.1991). And we know of no other legal mechanism short of mandamus by which relator may challenge respondent's order. Thus, unless this Court directs respondent to vacate his order, relator will have to conduct the criminal prosecutions without the assistance of the lawfully appointed assistant district attorneys Else and Boyles. We are left with the question of whether relator has demonstrated a clear legal right to have the respondent vacate his order.

## II.

A district attorney may find it useful, or even essential, that he appoint assistant district attorneys to handle or assist in the prosecution of a complex criminal case. A district attorney might make such an appointment because of the unique complexity of a criminal case or in order to preserve the public trust. In the instant case, relator appointed two assistant attorneys general, Else and Boyles, to serve as assistant district attorneys to assist him in the prosecution of the real parties in interest. Their appointment was no less than the exercise of a power necessary in this prosecution for the relator to carry out the powers and fulfill the duties of his office, as set down by the Constitution of this State and implemented by the Legislature.

District attorneys shall represent the State. TEX. CONST. art. V, § 21. The

duties of those offices are to be regulated by the Legislature. Art. V, § 21; *State ex rel. Holmes v. Salinas,* 784 S.W.2d 421 (Tex.Cr. App.1990). The Legislature has codified those rules in statutes.

"Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." TEX.CODE CRIM.PROC.ANN. Art. 2.01. A district attorney may employ, hire or retain any assistant prosecuting attorneys, or any other personnel, that he deems necessary for the proper operation and administration of his office. TEX.GOVT.CODE ANN. § 41.102. These assistant prosecuting attorneys, whether they be permanent or temporary members of his staff, are bound to the same prescribed duty "to see that justice is done." Art. 2.01, supra. They must be licensed to practice law in this State and serve at the will of the district attorney. TEX.GOVT.CODE ANN. § 41.103 & 41.105.

■ Relator appointed Else and Boyles to be assistant district attorneys in the instant case under the authority of these statutes. They are lawfully designated assistant prosecuting attorneys on relator's staff. A district attorney in this state, such as relator, has the right to appoint to his staff personnel which he feels are necessary to carry out the constitutional duties of his office. Relator had the clear legal right, under the constitutional and statutory mandate of his office, to make these appointments.

■ Respondent, in his second answer to relator's petition, asserted he had the discretion to decide whether to allow Else and Boyles to represent the State. On the contrary, relator is the only person whose discretion controls who will, or will not, serve on his staff. Neither the district courts, nor the county commissioners of Potter County, possess authority over a relator's decision of who will be appointed to his staff.

Respondent presumes Else and Boyles to be "special prosecutors" to support his argument that he has discretionary authority over their appointment. The designation of Else and Boyles as special prosecutors is inaccurate. See note 1, supra. The language of relator's deputation order, and the proof that relator was maintaining control and management of the prosecution, establish that Else and Boyles were no more than assistant district attorneys in this case. By statute, relator possesses authority to appoint Else and Boyles to assist him in the prosecution of the real parties in interest or, for that matter, any other criminal matter pending in his jurisdiction. §§ 41.102 & 41.105, supra.

In spite of this, respondent attempted to prohibit them from carrying out their statutory duties, claiming he had the authority to grant the motions to prohibit under the circumstances of this case. We shall determine whether the trial court exceeded its authority when it decided to prohibit Else and Boyles from serving as assistant district attorneys, beginning with respondent's decision that Else and Boyles had a conflict of interest.

## A.

Respondent concluded without elaboration that the Attorney General's simultaneous civil litigation against T.H.E. created a "significant conflict of interest" for Else and Boyles. Respondent denied relator the right to appoint the two assistant district attorneys.

■ A trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation. *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 6 (Tex.Cr. App.1990). In the instant case, the real parties in interest have not claimed their rights to due process were violated, nor did respondent conclude that due process was offended by the appointment of Else and Boyles as assistant district attorneys. We find respondent did not properly disqualify Else and Boyles on the basis of a conflict of interest because the real parties in interest failed to prove any prejudice to their rights, or deprivation of their right to due process. Respondent also argued several other legal grounds

to support his conclusion that the deputation order was invalid, and Else and Boyles should be disqualified.

### B.

Respondent apparently concluded that the appointment of Else and Boyles amounted to an assumption by the executive branch of a power (the power of prosecution) more properly attached to the judicial branch, thereby violating the separation of powers provision of the Texas Constitution.

Article 2, § 1 of the Texas Constitution provides:

"The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

"This separation of powers provision reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex.Cr.App.1990). This Court also stated:

"the separation of powers provision may be violated in either of two ways. First, it is violated when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch. The provision is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers."

802 S.W.2d, at 239 (emphasis and citations omitted).

■ Following this reasoning, we hold that respondent's conclusion that relator vio-lated the separation of powers provision is plainly incorrect. As long as relator, a member of the judicial branch of government, retains ultimate supervisory authority over the instant criminal prosecutions—as relator proved in the instant case—then the prosecution power remains in the hands of the judicial branch.

### C.

■ Respondent also concluded that relator's deputation order, which appointed Else and Boyles to be assistant district attorneys, was void because it "improperly stated ... an improper district." Respondent explained that relator failed to recite in the deputation order the correct judicial district for which he is district attorney. We find this conclusion to be in error.

In his deputation order, as well as the sworn oaths of Else and Boyles, relator appointed them to be his "lawful Assistant District Attorneys in this cause ... **in and for** the 251st Judicial District". Relator also stated that he was the District Attorney **"in and for** the 251st Judicial District of the State of Texas." Respondent, though the judge of the 251st District Court, ruled that the deputation order, to be proper and legal, should have set out that relator was the District Attorney of the 47th Judicial District. This ruling is contrary to the law which established the 47th and 251st Judicial Districts.

Relator cited the proper judicial district for the deputation as being **in and for** the 251st. TEX.GOVT.CODE ANN. § 24.428(a) established the 251st Judicial District as composed of Potter and Randall Counties. The District Court of that District, wherein this cause was heard, was empowered to "hear and determine" "all preliminary or interlocutory matters in which a jury may not be demanded, in any case pending in any county in the district." § 24.428(b). The provisions of the statute creating the 47th Judicial District Court also applies to the 251st Judicial District Court. § 24.428(c). As the District Attorney of the 47th Judicial District

of Potter and Armstrong Counties, relator is empowered to represent the State in all the district courts of Potter County, including the 251st Judicial District and the 251st Judicial District Court, § 43.127(a) & (b), so long as the criminal case originated in Potter County.[2]

Under these laws, relator's deputation order was valid. As the District Attorney of the 47th Judicial District, he represents the State in the 251st Judicial District in criminal cases that arise in Potter County. As a result, relator is the District Attorney **in and for** the 251st Judicial District, as stated in his deputation order. Moreover, the deputation order set out that Else and Boyles were deputized to be assistant district attorneys in the 251st Judicial District, where relator was empowered to represent the State and this cause was being heard. We find relator's deputation order did not recite an improper judicial district.

As a district attorney, relator is not required by law to execute a deputation order whenever he appoints or hires an assistant district attorney. In fact, the law does not prescribe any particular procedure that a district attorney must follow in the selection of his support personnel. In order to appoint or retain an assistant district attorney, only an oath must be administered. Art. XVI, § 1, TEX. CONST. We conclude that any defect in references to the numbers of the judicial districts, if there is a defect in the instant deputation order, is of no legal significance.

### D.

Respondent also concluded the deputation order was void because there was "no authorization from the Potter County Commissioners or any other authority." We hold this conclusion to also be plainly erroneous.

 The only authority necessary for the deputation order to be valid is the constitutional authority of the District Attorney. The Commissioner's Court of Potter County has no power or authority to decide, control or veto who the District Attorney decides to hire, retain, employ, deputize, or appoint to be his assistant district attorneys. Neither the Constitution nor the statutes give the commissioner's courts of this state any such power.[3] The powers of the Commissioner's Court of Potter County are expressly limited to approval or disapproval of the number and salaries of the personnel chosen by the district attorney who are to be paid from Potter County funds. TEX.GOVT.CODE ANN. §§ 41.106(a), 43.127(d) and (e); see, also, Op. Tex.Att'y Gen. No. H–922 (1977). The authority for deciding who will or will not be given the position of assistant district attorney is restricted solely to the district attorney. TEX.GOVT.CODE ANN. § 41.102 & 41.105. If the Commissioner's Court of Potter County decides not to approve a salary to be paid to the deputized assistant district attorneys in the instant case, they may do so under the statute, and the deputized assistant district attorneys in this cause will not have salaries paid by Potter County.[4]

The record in the instant case does not show that the Potter County Commissioners complained about the appointment of Else and Boyles. There was no suggestion that the Commissioners questioned who was going to pay the salaries of Else and Boyles, or

---

**2.** Randall County has its own criminal district attorney, who is empowered to represent the State in all criminal matters before the district courts of Randall County. See TEX. GOVT.CODE ANN. § 44.291(a). He is not designated the district attorney for the 251st judicial district. His title is merely Criminal District Attorney of Randall County.

**3.** Even in a case where a district attorney recuses himself so that a special prosecutor can be appointed, see *Eidson v. Edwards*, 793 S.W.2d, n. 4, at 5, the authority of a commissioners court is limited to deciding only whether or not they will

contract "with another commissioners court to pay expenses and reimburse compensation paid by a county to an attorney for the state who is appointed to perform additional duties." See Art. 2.07(b), supra (An Art. 2.07 special prosecutor is not entitled to additional compensation if he already receives a salary as an attorney for the State.).

**4.** We believe the law would not prevent a District Attorney from hiring employees and paying them from funds which are under his direct control.

attempted to assert any control, or to inject any input, into relator's decision to appoint Else and Boyles. We find that the deputation order carried all the authority it required, that being the authority of the relator. We hold the trial court erred in deciding the deputation order was void ab initio.

### E.

Before this Court, respondent presented several arguments in response to relator's application for mandamus.

### 1.

Respondent contends relator was procedurally barred from obtaining mandamus relief because his application does not meet the requirements of TEX.R.APP.PRO. Rule 121, because the allegations in the application are too "cursory." This argument is, at best, unpersuasive. First, Rule 121 is inapplicable to criminal cases. Thus, whether relator's application meets the requirements of Rule 121 is irrelevant. Second, respondent does not claim that relator's application failed to meet the requirements of TEX.R.APP.PRO. Rule 211, which is the applicable rule in criminal cases. Lastly, respondent fails to explain in what manner relator's allegations are too "cursory." This Court has reviewed the allegations and supporting affidavits in relator's application and finds them to have sufficiently demonstrated a clear right to mandamus relief.

Although respondent did not rule upon the real parties' in interest arguments concerning the incompatibility doctrine and Art. 16, §§ 33 & 40 of the Texas Constitution, we will address those arguments in the interests of justice and judicial economy.

### 2.

Respondent also argues that Else and Boyles are prohibited from serving by the common law doctrine of incompatibility. Respondent contends the appointments of Else and Boyles "run afoul" of the policies underlying the doctrine: "First, it is obvious that the [assistant] attorneys general are neither impartial nor undividedly loyal to the district attorney's office. Second, the assistant attorneys general have the unenviable and irreconcilable conflict of trying to serve two masters."

Under the common law, one person cannot simultaneously hold two incompatible offices, and the general rule is that the acceptance and qualification for a second office incompatible with the first office is an implied resignation of the first office. *Thomas v. Abernathy County Line I.S.D.*, 290 S.W. 152, 153 (Tex.Comm'n App.1927, judgm't adopted); Annot., 100 A.L.R. 1162, 1164 (1936). In determining incompatibility, the crucial question is whether the occupancy of both offices by the same person is detrimental to the public interest or whether the performance of the duties of one interferes with the performance of those of the other. See 67 C.J.S. Officers and Public Employees § 27(a) (1978).

Assuming arguendo that the incompatibility doctrine applies to a person serving as an assistant attorney general, we fail to see how such an "office" conflicts with the position of assistant district attorney. Under our state law, only county and district attorneys may represent the state in criminal prosecutions. TEX. CONST. art. 5, § 21; TEX.CODE CRIM.PROC.ANN. Arts. 2.01 and 2.02. The Attorney General, on the other hand, has no criminal prosecution authority. Rather, he is generally limited to representing the State in civil litigation. TEX. CONST. art. 4, § 22; TEX. GOVT.CODE.ANN. § 402.021; see generally K. Taylor, Modernizing the Powers of the State Attorney General, 36 Tex.B.J. 51 (1973). Since the duties of the Attorney General are distinct and generally unrelated to the duties of county and district attorneys to represent the State in criminal prosecutions, this Court fails to see, and respondent has not presented an argument to prove, that the appointment of Else and Boyles as assistant district attorneys will be detrimental to the public interest or that the performance of

their duties as assistant district attorneys will interfere in any way with their duties as assistant attorneys general.

### 3.

Lastly, respondent contends that Else and Boyles are prohibited from serving as assistant district attorneys by TEX. CONST. art. 16, §§ 33 & 40, which provide in part:

§ 33: "The accounting officers in this State shall neither draw nor pay a warrant or check on funds of the State of Texas, whether in the treasury or otherwise, to any person for salary or compensation who holds at the same time more than civil office of emolument, in violation of Section 40."

§ 40: "No person shall hold or exercise at the same time, more than one civil office of emolument, ..."

Respondent argues §§ 33 and 40 "prohibit members of the Texas Attorney General's Office from holding two state government positions simultaneously."

■ These constitutional provisions generally prohibit anyone from holding more than one "civil office of emolument" at one time. A "civil office" is an office that pertains to the exercise of the powers or authority of civil government. See 67 C.J.S. Officers and Public Employees § 5 (1978); Black's Law Dictionary 246 (6th Ed.1990). An "emolument" is a pecuniary profit, gain, or advantage. *Irwin v. State*, 147 Tex.Crim. 6, 177 S.W.2d 970, at 973 (1944). Unless one holds a "civil office of emolument," these constitutional provisions are inapplicable on their face.

In *Aldine I.S.D. v. Standley*, 154 Tex. 547, 280 S.W.2d 578, 583–585 (1955), the Supreme Court explained that the determining factor that distinguishes one who holds a public "office" from one who merely holds public employment is whether any sovereign function of the government is conferred upon the individual to be exercised by her for the benefit of the public largely independent of the control of others. See generally 67

C.J.S. Officers and Public Employees §§ 7–10 (1978). In other words, a public "officer" is authorized by law to independently exercise functions of either an executive, legislative, or judicial character, and the exercise of this power by the officer is subject to revision and correction only according to the standing laws of this state. A public employee, in contrast, is a person in public service whose duties are generally routine, subordinate, advisory, and as directed.

■ An assistant attorney general is a public employee and not a public officer. An assistant attorney general operates under the direct supervision of the Attorney General and exercises no independent executive power. Since an assistant attorney general does not hold a public "office," the constitutional provisions in question are inapplicable. See *Tilley v. Rogers*, 405 S.W.2d 220, at 224 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.) (professor at state college was public employee and, thus, TEX. CONST. art. 16, § 40, inapplicable).

Even if an assistant attorney general were a public officer for the purposes of Art. 16, § 40, that constitutional provision would still not bar relator's appointment of Assistant Attorneys General Else and Boyles as assistant district attorneys, because an assistant district attorney is not a public officer for the purposes of Art. 16, § 40. An assistant district attorney is an assistant prosecuting attorney, who is not a public officer under the holding in *Aldine I.S.D. v. Standley*. An assistant prosecuting attorney is hired by the district attorney, serves under his direction and at his discretion, and exercises no independent prosecutorial power. Thus, since Art. 16, § 40 proscribes only the holding of two civil offices of emolument, it cannot prohibit Assistant Attorneys General Else and Boyles from serving as assistant district attorneys in the instant case, especially since they were to be drawing no separate salary as assistant district attorneys. We find respondent's arguments in response to relator's application for mandamus to be without merit.

## CONCLUSION

Respondent sought, at the instigation of the real parties in interest, to prohibit Else and Boyles from serving as assistant district attorneys in the criminal prosecution of the real parties in interest. Relator argued this interfered with the lawful exercise of his authority as an elected district attorney to carry out the constitutional duty of his office. As this Court has ruled before, neither an elected prosecuting attorney, nor his assistants, can be disqualified or prevented by a trial court from carrying out their duties to prosecute criminal cases. In *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1 (Tex.Cr. App.1990), this Court held that a "trial court judge is without legal authority to remove a District Attorney from a case and, as such, any order attempting to do so is void." *Eidson,* at 5.

After examining the legal grounds advanced by respondent at the hearing on the motion to prohibit and before this Court, and after reviewing the legal conclusions set out by respondent in his decision to grant the motion to prohibit, we find that respondent lacked the authority to grant the motions to prohibit. The undisputed facts and relevant legal authority presented respondent with but one reasonable course to follow: denial of the motions to prohibit. The trial court's decision to do otherwise was erroneous.

Thus relator has a clear legal right to the vacation of respondent's order granting the motions to prohibit. Furthermore, since relator has no other adequate legal remedy, he is entitled to a writ of mandamus from this Court ordering respondent to vacate his order. As is our custom, we will withhold issuance of the writ and accord respondent an opportunity to conform his actions to this opinion. Only if such action is not taken will the writ of mandamus issue.

CLINTON, J., adhering to traditional rules enunciated in *State ex rel. Curry v. Gray,* 726 S.W.2d 125, 126 (Tex.Cr.App.1987), dissents to this denial of judicial power to decide an issue raised by real parties in interest.

MILLER, J., agrees with Judge MEYERS' conclusion that from now on this Court will "authorize review by mandamus of discretionary decisions by trial court judges" as long as the discretionary decision is "wrong" enough. To this extreme departure from the doctrine of *State ex rel. Curry v. Gray,* 726 S.W.2d 125 (Tex.Cr.App.1987), he dissents.

MALONEY, Judge, concurring.

Article IV, Section 22 of the Texas Constitution defines the powers and duties of the attorney general. Article V, Section 21 of the Texas Constitution defines the powers and duties of county and district attorneys. From time to time the legislature has enacted laws within the framework of the constitutional provisions establishing the duties and jurisdiction of those various offices. Nothing in the constitution or the laws of the state authorize prosecution of a criminal case in the trial courts of this state by the attorney general or, absent disqualification, by any person other than the duly elected district or county attorney.

The attorney general's office of the State of Texas does not supervise the office of county or district attorneys, as is the case where the Attorney General of the United States has supervisory powers over the various United States attorneys in the prosecution of criminal cases. As early as 1882, the Texas Supreme Court stated that prosecutorial power is vested only in the county and district attorneys. *State v. Moore,* 57 Tex. 307 (1882). While it may be argued that the state system of prosecutorial conduct would be more efficient if our prosecutorial offices were organized much like the federal system, the legislature historically has seen fit not to grant such authority in the form of proposed constitutional amendments or legislation.

However, nothing prohibits the district or county attorney from seeking the *assistance* of the attorney general and/or his assistants, or any other duly licensed attorney, in the prosecution of a criminal case as long as the district or county attorney does not relinquish control of or responsibility for such

prosecution. Control over the prosecution logically includes the presence of the district or county attorney or an assistant district or assistant county attorney respectively in the courtroom during all phases of the trial. Deputizing or appointing an assistant attorney general as an assistant district or assistant county attorney while he is still employed as an assistant attorney general to assist the district or county attorney in the prosecution of a criminal case is neither allowable nor authorized by law.

The separation of powers doctrine prohibits what seemingly occurred in this case, although an attempt to avoid this problem was made by the erroneous and unauthorized deputation of the assistant attorneys general as assistant district attorneys. The record is not clear as to whether this attempt was an effort by the elected district attorney to relinquish his responsibility or control of the criminal case to the office of attorney general or whether he intended to maintain control over the prosecution.[1]

The trial court ordered, in part, that the assistant attorneys general "shall have no further involvement in this case." This order is overbroad. As stated above, the district attorney is entitled to the help and assistance of the attorney general's office provided he does not relinquish control over the prosecution. Accordingly, in the absence of a showing that the district attorney's office relinquished control and decision-making authority over the prosecution of the case, the trial court abused its discretion by barring the attorneys general from further involvement. For these reasons, I concur in the judgment of the majority.

MEYERS, Judge, concurring.

The instant cause arises from the ruling of a trial judge (Respondent) sustaining the motion of a criminal defendant to prohibit two assistant attorneys general (AGs) from serving as district attorneys in the criminal prosecution against him. The district attorney of Potter County (Relator), who solicited the assistance of these AGs, now asks this Court to force Respondent to withdraw his order, and we are prepared to do so if he does not relent voluntarily.

The plurality opinion announcing the judgment of this Court holds that Respondent "lacked the authority to grant the motions to prohibit." Op. at 932. But it is clear from the text of this opinion that the plurality judges do not mean Respondent would really have been without lawful authority to bar the AGs from serving as prosecutors had the evidence shown a conflict of interest rising to the level of a due process violation, Op. at 928, or an assignment of prosecutorial responsibility to persons over whom the district attorney did not retain ultimate supervisory authority, Op. at 928, or an invalid deputation order appointing the AGs to serve as assistant district attorneys, Op. at 929. These are precisely the grounds upon which Respondent claims he prohibited the assistant AGs from acting as prosecutors. But rather than demonstrate that Respondent had no authority to remove the AGs at all, the Court spends most of its time arguing that none of the grounds for removal were proven. Thus, the plurality judges merely believe that Respondent erred to grant the motion because the evidence was not sufficient to establish a lawful basis for removal of the AGs. With all due respect to my colleagues, this is not at all the same thing as a lack of authority to rule upon the motion, which is what would be required for mandamus relief under our traditional rules.

What the Court should have emphasized instead is that our traditional rules simply do not apply any longer. Those rules have lately undergone a profound change which now makes the key inquiry in mandamus cases

---

1. Although the assistant attorneys general involved in this case testified that they were asked to "try the case", nothing in the record indicates that the district attorney had relinquished prosecutorial control of the case and was not going to participate in the trial. The affidavit of one of the deputized assistant attorneys general states that there was "ongoing involvement by the Potter County District Attorney's Office in every phase of this case."

934

whether Relator has "a clear right to relief," not whether Respondent has "a ministerial duty" or "lacks legal authority." Although I opposed this new formulation, the rule of law obliges me to support it as precedential in succeeding cases, at least pending deliberate reexamination by the Court. And I am happy to do so. The only difficulty is that the Court has not yet made a very clear or definitive statement of the changes it has wrought, nor does it observe the rhetorical distinctions necessary to communicate those changes clearly to the bench and bar.

In past years, the term "ministerial duty" identified a fundamental prerequisite to the issuance of mandamus writs. Under the traditional view, a writ of mandamus might issue to compel the discharge of a public function only if the law clearly imposed a duty, the performance of which did not call for the exercise of any discretion or judgment. *State ex rel. Curry v. Gray,* 726 S.W.2d 125 (Tex.Crim.App.1987) (opinion on rehearing). This included the duty of a public official to withdraw any order or judgment which he was without legal authority to make.

Recently, in *Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex.Crim.App.1994), this Court expanded its understanding of "ministerial" violations to include judicial conduct "that ignores clear, binding precedent from a court of superior jurisdiction" or that is "clearly contrary to well-settled law." One necessary effect of this expansion is that a judge's authority to act no longer bars this Court from reviewing the propriety of his actions in a mandamus proceeding.

In the instant cause the plurality opinion begins by expressing the controlling rule of law in its new incarnation as follows.

[Mandamus] is available only when the relator can establish that he has no other adequate legal remedy and that, under the relevant law and facts, he has a clear legal right to the relief sought. Furthermore, ... a relator may be able to demonstrate a clear legal right to relief if the respon-

dent's nominally discretionary act actually constituted an abuse of discretion.

Op. at 926 (citations omitted). I am satisfied that this expression of the rule is consistent with the Court's recent decision in *Healey v. McMeans. See also Buntion v. Harmon,* 827 S.W.2d 945 (Tex.Crim.App.1992); *Curry v. Wilson,* 853 S.W.2d 40, 43 (Tex.Crim.App. 1993). The issue in this case, therefore, devolves into the question whether Respondent erred to prohibit the appearance of assistant AGs in his courtroom as prosecutors, not whether he had the authority to do so.

I agree that Respondent erred in this respect, substantially for the same reasons given in the plurality opinion, and therefore concur in the result it reaches. But the multiplicity of separate views held by judges on this Court still prevents the kind of harmonious mandamus jurisprudence which practitioners of the criminal law have a right to expect. I have elsewhere argued that the phrase "ministerial duty," which identified the first prong of traditional mandamus analysis, and "clear right to relief," with which it has lately been replaced, do not really mean the same thing, either in theory or in practice. *Healey v. McMeans* (Meyers, J., dissenting). But mine is not an opinion shared by most of my colleagues, whose writings evince a preference to resolve mandamus issues by fictionalizing a one-to-one relationship between the authority to act and the correctness of action taken. This fiction would pose no serious inconsistency in the law were it not that the two phrases mean such different things in plain English and have, therefore, promoted diametrically opposite understandings of the same rule by different judges on this Court. Thus, Judge Baird evidently believes that "clear right to relief" is just another way of expressing "ministerial duty" while Judge Campbell seems to think that "ministerial duty" is another way of expressing "clear right to relief." Not surprisingly, they reach completely different conclusions in this case, even

though they purport to rely upon the same criterion.*

The Court's vagueness on this matter only promises to exacerbate the difficulty for litigants, who may never be able to predict in advance whether an application for extraordinary relief actually states a cognizable claim. On balance, I cannot say myself that the rule is really any clearer now than it was few months ago. But, if you have a question of criminal law, and you're thinking about filing an application for writ of mandamus with this Court, just remember. The judges up here might continue to use old-fashioned phrases like "ministerial duty," "discretionary act," and "lack of authority" when it suits their purposes. But they probably don't mean what you think.

Because I understand the holding in *Healey v. McMeans* to authorize review by mandamus of discretionary decisions by trial court judges, and because I am persuaded that Respondent erred, under the circumstances of this case, to prohibit the assistant AGs from serving as prosecutors in his court, I concur in the judgment to grant relief.

BAIRD, Judge, dissenting on Relator's Application for Writ of Mandamus.

We ordered this application filed and set for submission to determine whether mandamus would lie to compel a trial judge to assent to the appointment of an independent prosecutor by a district attorney. Today, nineteen months after oral argument, we resolve that issue with three separate opinions, none of which garner a majority of the Court. I respectfully dissent because none of the opinions can withstand careful scrutiny in light of the record, the applicable statutes and the relevant decisional authority.

## I.

## THE FACTS

On October 16, 1991, the Attorney General's Office filed a civil action in the 47th District Court of Potter County alleging that Texas Health Enterprises, Inc., as owner, operator and/or manager of a nursing home in Potter County, violated provisions of the Nursing Home Act and regulations promulgated by the Texas Department of Health.[1] Approximately five months later, on March 27, 1992, the Potter County Grand Jury returned indictments against Texas Health Enterprises and several of its officers and employees (hereafter real parties in interest) on allegations similar or identical to those in the civil action.[2] The indictments were based upon evidence obtained by and presented to the Potter County Grand Jury by members of the Attorney General's office.[3]

On November 20, 1992, after the real parties in interest questioned the participation of

---

* If there are some conditions under which the trial judge is permitted by law to remove a prosecuting attorney, and if he has the authority to decide whether those conditions exist, his duty is not ministerial, regardless of whether he makes the right decision. This is the traditional view of mandamus to which I subscribed before *Healey*. I have since acquiesced to a contrary proposition only in obedience to the rule of *stare decisis*, well-described by Judge Baird's dissenting opinion in the section immediately following his criticism of me. I think it plain from a reading of the Court's opinion in *Healey* that Judge Baird is mistaken to insist in the instant cause that the traditional view of mandamus was not altered. In *Healey*, the Court did not hold that the trial judge was entirely without authority to decide whether a constitutional privilege existed. Rather, the Court merely held that the trial judge clearly erred to enforce such a privilege in that case. However much Judge Baird may assert that our law of mandamus was not altered by this holding, it remains clear to me that it was.

And, although the Court does not cite *Healey* in the instant cause, it is manifest that the traditional law of mandamus is not in control here either.

1. The civil action was filed by Viviana S. Patino, an assistant attorney general assigned to the Consumer Protection Division of the Attorney General's office.

2. Specifically, the real parties in interest were indicted for injury to an elderly individual, injury to an invalid, tampering with government records, and, misapplication of fiduciary property. *See,* Tex.Penal Code Ann. §§ 22.04, 32.45, and 37.10.

3. Assistant Attorneys General Rod Boyles and Jack Else assumed responsibility for the prosecution of this case after the departure of Assistant Attorney General Penny Burt. Burt initially investigated this case and presented evidence to the Potter County Grand Jury. Each of these attorneys are/were assigned to the Medicaid Fraud Unit of the Attorney General's office.

the Attorney General's office, relator executed a document "deputizing" Rod Boyles and Jack Else, Assistant Attorneys General, to act on behalf of the Potter County Criminal District Attorney in each of the criminal prosecutions against the real parties in interest.[4] The real parties in interest filed a motion to prohibit Boyles and Else from acting as prosecutors.[5] At the hearing on this motion, Boyles and Else represented the State.[6]

The real parties in interest presented numerous documents, including the court files from the civil action, *see* n. 1, *supra,* and documents from the Attorney General's office demonstrating the participation of the Office of the Attorney General in both the civil and criminal actions. The real parties in interest further presented testimony from South Texas College of Law Professor Neil McCabe and Dain Whitworth, attorney at law, in support of the contention that relator violated the "separation of powers" provision of the Texas Constitution. Additionally, Boyles and Juan Flores, an investigator employed by the Office of the Attorney General, testified as to the investigation underlying the criminal actions.[7]

In ruling on the motion, respondent stated:

> Counsel, I'd like to say that notwithstanding the great number of attorneys that have been involved in this case, it

gives it the appearance of a civil case. We must always be mindful that this is above and foremost a criminal action. And it's the right of a criminal action that is at issue here.

The challenges being made by the Defense challenge the right of the prosecution. Those challenges go to the very nature of the system.

Respondent granted the motion and ordered that Boyles and Else "not be involved in any of the functions or decisions that constitute prosecutorial decisions," *but* specifically allowed "future involvement of the Attorney General's office ... by way of investigations and assistance...." Relator seeks mandamus relief to set aside respondent's order.

## II.

### Will mandamus lie?

### A.

### Traditional Analysis

Our authority to issue a writ of mandamus is derived from Tex. Const. art. V, § 5, which provides "... the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition and certiorari." *See also,* Tex.Code Crim.Proc.Ann. art. 4.04, § 1. Traditionally, to be entitled to a writ of man-

---

**4.** The document erroneously referred to relator as the district attorney for the 251st Judicial District.

**5.** In their motion, the real parties in interest alleged: 1) under Tex. Const. art. V, § 21, Tex. Gov't Code Ann. § 43.127, and Tex.Code Crim. Proc.Ann. art. 2.01, only the Potter County Criminal District Attorney may prosecute the pending criminal actions; 2) under Tex.Code Crim.Proc. Ann. art. 2.01, only the county attorney may replace the district attorney if he is unable to prosecute and action; 3) under Tex.Code Crim. Proc.Ann. art. 2.07, the district attorney may be replaced only in limited circumstances, none of which have been shown; 4) Tex. Const. art. IV, § 22 does not confer jurisdiction on the attorney general to prosecute criminal cases; 5) the appointment of Boyles and Else violates Tex. Const. art. 16, §§ 33 and 40 because they are holding two government offices; and, 6) Boyles and Else, by participating this prosecution, have violated

Rules 1.11, 1.15 and Rule 4.04(b)(1), of the Texas Disciplinary Rules of Conduct. It was the movant's position that the actions of Assistant Attorneys General Boyles and Else "violate the constitutional grant of authorities to the Attorney General and the County and District Attorneys, the Separations of Powers doctrine, the sovereignty of the local prosecution system, and the constitutional prohibition against holding of two state offices."

**6.** Additionally, relator was represented by Assistant Attorney General Charles A. Palmer in oral argument before this Court. However, relator did not "deputize" Palmer as an assistant district attorney.

**7.** This testimony is discussed in greater detail in Part III, B, *infra.*

damus, relator must demonstrate: 1) the act sought to be compelled is purely ministerial (as opposed to discretionary); *and,* 2) the relator has no other adequate remedy. *State ex rel. Holmes v. Third Court of Appeals,* 885 S.W.2d 389, 392 (Tex.Cr.App.1994); *Braxton v. Dunn,* 803 S.W.2d 318, 320 (Tex.Cr.App. 1991); *State ex rel. Holmes v. Salinas,* 784 S.W.2d 421 (Tex.Cr.App.1990); *Collins v. Kegans,* 802 S.W.2d 702 (Tex.Cr.App.1991); *and, Stearnes v. Clinton,* 780 S.W.2d 216 (Tex.Cr.App.1989).

As we stated in *State ex rel. Curry v. Gray,* 726 S.W.2d 125, 128 (Tex.Cr.App.1987), an act is ministerial if it constitutes a duty, clearly fixed and required by law. The duty to act must be unequivocal, unconditional and present:

> ... a "ministerial act" is one which is accomplished without the exercise of discretion or judgment. If there is *any* discretion or judicial determination attendant to the act, it is not ministerial in nature. Nor is a ministerial act implicated if the trial court must weigh conflicting claims or collateral matters which require legal resolution.

*Id.*[8]

### B.

### The Plurality Opinion

Today, the plurality departs from our traditional approach and expands mandamus relief to cover discretionary acts:

> ... [A] relator may be able to demonstrate a clear legal right to relief if the respondent's *nominally discretionary act* actually constituted an abuse of discretion.

Plurality op., 887 S.W.2d 921, 926 (Tex.Cr. App. No. 71,596, decided this date). The majority cites no authority, nor can I find any to support such an expansion of mandamus. We have never held mandamus will lie for a "nominally discretionary act."

8. All emphasis is supplied unless otherwise indi-

In several recent opinions, our focus on the ministerial nature of respondent's act changed slightly and we asked whether relator held a "clear right" to the relief sought. However, this change in focus was not intended to effect a material change in our traditional approach to mandamus applications. In *Buntion v. Harmon,* 827 S.W.2d 945 (Tex.Cr.App.1992), we explained:

> Historically, this Court has stated that to be entitled to the extraordinary relief of mandamus, the relator must establish ... (1) that the act sought to be compelled is purely *ministerial,* as opposed to discretionary or judicial in nature....

> \* \* \* \* \* \*

> ... A "ministerial" act is one which is clearly compelled by the facts and legal authority extant in a given situation.... Thus, a *theoretically* discretionary act may nonetheless be "ministerial" in *application* if the facts and circumstances of a given case lead to but one rational course of action.

*Id.,* 827 S.W.2d at 947, n. 2 (citations and quotations omitted) (emphasis in original). *See also, Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex.Cr.App.1994). Further,

> ... [W]e have repeatedly held that [mandamus] is available only when the relator can establish two things: first, that under the relevant law and facts, he has a *clear right to the relief sought, i.e., the act he seeks to compel is "ministerial"....*

*State ex rel. Sutton v. Bage,* 822 S.W.2d 55, 57 (Tex.Cr.App.1992).

Therefore, whether our focus is on relator's "clear right" to relief or respondent's "ministerial act," the result should be the same. Mandamus does not lie when the act sought to be compelled is discretionary. *Id.*

### C.

### Judge Meyers' View

Judge Meyers argues that our focus on relator's "clear right" to relief was a "pro-

cated.

found change" in our "traditional rules." Concurring op. 887 S.W.2d at 933 (Meyers, J., concurring). Judge Meyers recently professed to subscribe to "the traditional and conservative view of mandamus." *McMeans*, 884 S.W.2d at 776 (Meyers, J., dissenting).

In *McMeans*, the State issued subpoenas compelling four newsmen to appear and present evidence relevant to a pending criminal case. Judge McMeans quashed the subpoenas finding the newsmen held a journalistic privilege, under the First Amendment and Tex. Const. art. I, § 8, not to testify or produce evidence in a criminal trial. *McMeans*, 884 S.W.2d at 773–774. The State sought mandamus relief contending Judge McMeans had no discretion to quash the subpoenas because Texas did not recognize a journalistic privilege. *Id.* Noting first that the Texas Rules of Criminal Evidence did not provide a journalistic privilege, and that we expressly rejected the existence of such a privilege in *Ex parte Grothe*, 687 S.W.2d 736 (Tex.Cr.App.1984), we held:

> ... [R]elator has demonstrated that respondent has a ministerial duty to vacate the orders granting the motions to quash. This is so because the recognition of a "newsman's privilege" is clearly contrary to well-settled law.

*McMeans*, 884 S.W.2d at 774. Judge Meyers strongly objected to the Court's determination that a trial judge's act is ministerial "when there is but one proper order to be entered." *McMeans*, 884 S.W.2d at 778 (Meyers, J., dissenting) (quoting *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Cr.App. 1991)). However, Judge Meyers did not address *Grothe*'s rejection of the journalistic privilege.

Today, in an abrupt change of position, Judge Meyers concurs in the result reached by the plurality. To justify his sudden change, Judge Meyers argues that our grant of relief in *McMeans* expanded our traditional mandamus authority, citing *Curry v. Gray*, 726 S.W.2d 125 (Tex.Cr.App.1987) (Opinion on rehearing). Concurring op., 887 S.W.2d at 933 (Meyers, J., concurring). However, *McMeans* did not expand our mandamus authority. In *Texas Dept. of Corrections, Etc. v. Dalehite*, 623 S.W.2d 420 (Tex.Cr.App. 1981), we stated:

> ... An act is said to be ministerial where the law clearly spells out the duty to be performed ... and does so with such certainty that *nothing is left to the exercise of discretion or judgment.*

*Id.*, 623 S.W.2d at 424 (citing *Forbes v. City of Houston*, 356 S.W.2d 709 (Tex.Civ.App. 1962). Clearly, *McMeans* was nothing more than an application of our traditional mandamus authority, not an expansion of it.

Judge Meyers apparently believes that we no longer require that the act sought to be compelled be ministerial. Instead, in the instant case we must now determine "whether Respondent erred to prohibit the appearance of assistant AGs in his courtroom as prosecutors, not whether he had the authority to do so." Concurring op., 887 S.W.2d at 994 (Meyers, J., concurring). Of course, if Judge Meyers' reading of *McMeans* were correct, the plurality could simply cite *McMeans*, dispense with its discussion of "nominal discretion," and directly review respondent's order. However, the plurality does not even mention, much less rely on, *McMeans*.

For these reasons, Judge Meyers' reliance on *McMeans* is misplaced. Today, Judge Meyers, unable to maintain the position he stated just five months ago, facilitates the very harm he predicted. Because of Judge Meyers' concurrence, we "are left with ... a system perilously close to full appellate supervision of lower court decision-making by means of mandamus and prohibition." *McMeans*, 884 S.W.2d at 780 (Meyers, J., dissenting).

### D.

The plurality should not so easily discard our traditional approach to mandamus.

One of the principles of our legal system is that when a point of law has been settled

by decision of the highest court of the state, the decision becomes the law of the state and forms a precedent that is not afterward to be departed from. This is known as the doctrine of *stare decisis*. This doctrine is ... based upon public policy and sound judicial administration, which require that the courts observe a proper respect for the prior decisions of the highest court.

16 Tex.Jur.3d *Courts,* 451–452, § 119. The doctrine of *stare decisis* requires that we demonstrate "the reluctance with which one in a judicial position should approach a line of decisions of long standing with the purpose of setting aside the doctrines therein laid down, some grey with antiquity, and the doctrine of *stare decisis* should bear heavily on retaining the integrity of such decisions." *Wolfe v. State,* 147 Tex.Crim. 62, 178 S.W.2d 274, 281 (App.1944) (opinion on rehearing). *See also, Ex parte Porter,* 827 S.W.2d 324, 328–329 (Tex.Cr.App.1992) (Baird, J., dissenting).

The plurality should explicitly recognize our previous mandamus decisions and provide an in-depth analysis and a justification for departing from those decisions. If our mandamus jurisprudence is unsettled and lacks "a clear or definitive statement" regarding our authority to grant relief, concurring op. 887 S.W.2d at 934 (Meyers, J., concurring), the plurality opinion fails to provide such a statement. I can only conclude the plurality's failure to recognize and discuss the profound changes they have wrought upon our settled mandamus decisions arises from its sympathy with the prosecutors in this case. While I share their sympathy, we should not let emotion override *stare decisis* and decades of considered jurisprudence.

Because a majority of this Court does not overrule our precedent, today's plurality decision has little or no precedential value and I believe our traditional mandamus authority remains intact. Therefore, to be entitled to mandamus relief, we must determine wheth-er the act sought to be compelled is ministerial. *State ex rel. Holmes v. Third Court of Appeals,* 885 S.W.2d 389 (Tex.Cr.App.1994).

## III.

To determine whether the act is ministerial, one must first determine what position Boyles and Else hold in the prosecution of the instant case. My review of the applicable statutes and the relevant decisional authority reveals the three possible categories of appointed prosecutors.

### A.

#### Attorney Pro Tem/Special Prosecutor

Tex.Code Crim.Proc.Ann. art. 2.07(a) provides for the appointment of an attorney pro tem/special prosecutor:

> Whenever an attorney for the state *is disqualified* to act in any case or proceeding, *is absent* from the county or district, or is otherwise *unable to perform the duties of his office,* or in any instance where there *is no attorney for the state,* the judge of the court in which he represents the state *may appoint any competent attorney* to perform the duties of the office during the absence or disqualification of the attorney for the state.

However, the district attorney must initiate his own recusal under art. 2.07:

> Article 2.07, V.A.C.C.P., provides for court appointment of an *"attorney pro tem," a.k.a. a "special prosecutor,"* whenever an attorney for the state is "disqualified to act in any case or proceeding, is absent from the county or district, or is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the state." Art. 2.07(a) ... *Nowhere do these statutes give trial courts any authority to remove prosecutors from cases for any of these reasons, including "disqualification"; responsibility for recusal is left with the prosecutor.*

*State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 5 fn. 4 (Tex.Cr.App.1990) (plurality opinion).[9]

Relying on *Eidson,* 793 S.W.2d at 6, relator contends, "... whether a special prosecutor may represent the state in a given case is wholly within the authority of the district attorney." Relator's Brief pg. 5. Relator's contention is without merit for at least two reasons. First, this is *not* an art. 2.07 case. The record is clear that relator is not disqualified, absent or unable to perform the duties of his office nor has relator initiated his own recusal.[10] Second, *Eidson* concerned the removal of an elected district attorney. *Eidson* is inapposite because respondent's order does *not* limit relator's participation. Instead the order limits the participation of the Attorney General's Office.

For these reasons, art. 2.07 is inapplicable to the instant case and Boyles and Else are *not* acting as attorneys pro tem or special prosecutors.[11]

### B.

### Assistant Prosecuting Attorney

Tex.Gov't Code Ann. § 41.102 provides for the employment of assistant prosecutors:

A prosecuting attorney may *employ* the assistant prosecuting attorneys, investigators, secretaries, and other office personnel that in his judgment are required for the proper and efficient operation and administration of the office.

The plurality concludes relator "employed" Boyles and Else as assistant prosecuting attorneys under § 41.102.[12] However, the record indicates otherwise.

An employee is defined as:

A person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and *direct the employee in the material details of how the work is to be performed.* One who works for an employer; a person *working for salary or wages.*

Generally, when person for whom services are performed has right to control and direct individual who performs services not only as to result to be accomplished by work but also as details and means by which result is accomplished, individual subject to direction is an "employee".

Black's Law Dictionary 273 (5th ed. 1983).

Under this definition, Boyles and Else are not employees of relator for at least three

---

9. Presumably, the trial judge may initiate the appointment in situations where a district attorney has been removed from office. Tex.Loc'l Gov't Code Ann. §§ 87.012 & 87.013. Section 87.013 furnishes the grounds and procedures concerning the removal of a district attorney:

> (a) An officer [district attorney] may be removed for:
> (1) incompetency;
> (2) official misconduct; or
> (3) intoxication on or off duty caused by drinking alcoholic beverage.
> These three areas are exclusive. A trial judge may "remove a District Attorney *only* for one of the three causes enumerated in Sec. 87.013 and *only* after the trial by jury mandated in Sec. 87.018(a)." *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 5 (Tex.Cr.App.1990) (plurality opinion) (emphasis in original).

10. The record reveals that relator considered recusal but chose not to recuse himself in these cases. At the hearing on the Motion to Prohibit, Boyles testified:

> ... The understanding at the time was that [relator's] recusing himself was a direction he

could take. And it became apparent to me personally, after discussions with [relator], that there were other options. And we talked about those options, about what the law required, what kind of problems may be if [relator] recused himself, what [relator's] heartfelt feelings were about the recusal and what [relator's] concerns were.

11. I pause to note that *Eidson* might apply had respondent attempted to limit the participation of relator or one of his employees. *See,* II B, *infra.*

12. The plurality states:

> Relator appointed Else and Boyles to be assistant district attorneys in the instant case under the authority of [Tex.Gov't Code Ann. §§ 41.102, 41.103 & 41.105]. They are lawfully designated assistant prosecuting attorneys on relator's staff. A district attorney in this state, such as relator, has the right to appoint to his staff personnel which he feels are necessary to carry out the constitutional duties of his office....
> Plurality op. 887 S.W.2d at 927.

reasons. First, Boyles and Else do not receive a salary from Potter County.[13] Second, Boyles and Else have not assumed any general responsibility for the prosecution of criminal cases in Potter County. In fact, the deputation order specifically limits their responsibilities to the instant prosecution. Third, although relator may be controlling or directing the result to be accomplished by Boyles and Else, relator does *not* control the details or means by which this result is accomplished. The record from the hearing on the "Motion to Prohibit" demonstrates:

1) The physical evidence in the underlying cases includes "a couple of truckloads" of records which have been removed from the Potter County District Attorney's Office and are currently in the possession of the Office of the Attorney General in Austin, *approximately 475 miles from Potter County.*

2) An investigator from the Office of the Attorney General was assigned to investigate the underlying cases even before the Potter County District Attorney's involvement. This investigator reports to Boyles and Else, and reported to Burt before them. Further, all evidence obtained through this investigation *has been retained by the Austin Office of the Attorney General.*

3) The Potter County grand jury was convened at the request of the Office of the Attorney General. (exhibit S–1). Burt prepared the grand jury subpoenas. (75–76) Burt further, representing the Office of the Attorney General, scheduled witness' appearances before the grand jury (exhibits D–16, D–17, D–18), notified other counsel of court appearances, (exhibits D–19, D–21) and transmitted plea bargain offers to the real parties in interest. (exhibit 22).

Clearly, the *details and means underlying the instant prosecution* are controlled by the Office of the Attorney General.

In his concurring opinion, Judge Maloney finds an "absence of a showing that the district attorney's office relinquished control and decision-making authority over the prosecution of the [instant] case...." Concurring op. 887 S.W.2d at 933 (Maloney, J., concurring). He concludes "the district attorney is entitled to the help and assistance of the attorney general's office provided he does not relinquish control over the prosecution." *Id.* This conclusion is simply *not* supported by the record before us. With the exception of the deputation order signed by relator, but prepared by Boyles, the record contains no evidence that relator has exercised any control over the details and means of the instant prosecution. To the contrary, relator himself contends he relinquished control of the instant prosecution to Boyles and Else because Boyles and Else "possess particular expertise" in the prosecution of "cases of providers' abuse and neglect of Medicaid recipients, as well as complex white-collar Medicaid crime." Petition for Writ of Mandamus at 6. Judge Maloney's concurrence has every appearance of a result searching for a rationale.

For the aforementioned reasons, Boyles and Else are *not* employees of relator and § 41.102 is inapplicable.

### C.

### Independent Prosecutor

The plurality does not address this last category of appointed prosecutors which, for lack of a better term, I will refer to as "independent prosecutors." This category of appointed prosecutors is not defined by statute but is found in our case law and is akin to an independent contractor. An independent contractor is

... one who ... contracts to do a piece of work according to his own methods and is

---

**13.** Relator does not contend that Boyles and Else receive a salary from Potter County, contending only that Boyles and Else may be appointed regardless of their position as employees of the Attorney General. The plurality avoids this issue by recognizing the Potter County Commissioner's Court must approve the payment of any salaries of assistant prosecutors from county funds. Plu-

rality op. 887 S.W.2d at 929. The plurality further raises and decides an issue which is not found in any of the materials before the Court: whether relator has authority to hire salaried employees without the approval of the Potter County Commissioner's Court if the salaries are paid from funds under relator's "direct control." Plurality op. 887 S.W.2d at 929, n. 4.

subject to his employer's control *only* as to [the] end product or final result of his work.

Black's Law Dictionary 394 (5th ed. 1983). Such prosecutors appear on behalf of the State in a specific case usually at the request of the district attorney, or in some cases, the victim's family. We have addressed this type of appointed prosecutor on several occasions. *See, Lopez v. State,* 628 S.W.2d 77, 80 (Tex. Cr.App.1982) (private attorney employed to prosecute case); *Ex parte Powers,* 487 S.W.2d 101, 104 (Tex.Cr.App.1972) (private attorney employed by victim's family to prosecute case); *Lopez v. State,* 437 S.W.2d 268, 269 (Tex.Cr.App.1969) (private attorney employed by victim's family to prosecute case); *Phillips v. State,* 159 Tex.Crim. 286, 263 S.W.2d 159, 160 (App.1953) ("special prosecutor" participated in the trial of the case over defendant's objection); *Bingham v. State,* 163 Tex.Crim. 352, 290 S.W.2d 915, 918–919 (App.1956) (district attorney from another judicial district assisted elected district attorney in the trial of case).

In this case, the deputation demonstrates that relator intended Boyles and Else to become independent prosecutors:

I, [relator], nominate and appoint Rod Boyles and Jack Else, Assistant Attorney Generals, as my lawful Assistant District Attorneys, *in this cause,* in my name, place, and *stead, to do and perform any and all acts and things* pertaining to the Office of said District Attorney for the 251st Judicial District, of the said County and State, hereby ratifying and confirming any and all such acts and things lawfully done in the premises by virtue hereof, save and except any indictment against P. Harlon Wilson, D.O.

Furthermore, relator contends that Boyles and Else, as assistant attorneys general assigned to the Attorney General's Medicaid Fraud Control Unit, "possess particular expertise" in the prosecution of "cases of providers' abuse and neglect of Medicaid recipients, as well as complex white-collar Medicaid crime." Petition for Writ of Mandamus

pg. 6. As is discussed *supra,* III, B, the Austin Office of the Attorney General has directed the investigation, collection of evidence, and prosecution of the instant case.

Because relator, in order to receive the benefit of their expertise, has surrendered control of the detail and means by which Boyles and Else will prosecute the real parties in interest, Boyles and Else are independent prosecutors.

## D.

### Discussion

The questions remains whether a trial judge's decision to authorize the appointment of an independent prosecutor is a ministerial or discretionary act. In *Loshe v. State,* 160 Tex.Crim. 561, 272 S.W.2d 517 (App.1954), the defendant contended the trial judge erred in allowing the participation of an independent prosecutor. We held:

We have found no case where, as here, the trial court has permitted, over objection of the accused, volunteer counsel to appear and assist the State in the prosecution where the prosecuting attorneys were not only present to conduct the prosecution but entirely able and well qualified to protect every interest of the State.

\* \* \* \* \* \*

The *discretion of the trial court* over such matters *must be given application* and his action reviewed only for the purpose of ascertaining if *an abuse of discretion has occurred.*

*Id.,* 272 S.W.2d at 520 (opinion on rehearing).

We have consistently applied an abuse of discretion standard when reviewing a trial judge's decision to permit the appointment of an independent prosecutor. In *Bingham,* the district attorney of another judicial district appeared and assisted in the prosecution at the request of the district attorney in whose district the prosecution was pending. Bingham's motion to remove the district attorney from the other district was denied.

We held: "We are unable to conclude, here, that the trial court *abused his discretion* in refusing [Bingham's] motion." *Bingham,* 290 S.W.2d at 919. In *Lopez,* 437 S.W.2d at 269, we overruled a similar point of error because there was "nothing in the record which would warrant a finding that the trial court *abused his discretion* in permitting the special prosecutor to participate in the case." *See also, Figueroa v. State,* 375 S.W.2d 907 (Tex.Cr.App.1964) (no *abuse of discretion* shown by allowing special prosecutor).

Boyles and Else are independent prosecutors and *Bingham* and *Lopez* hold that the decision to permit their appointment was within the discretion of respondent.[14] Since the decision to enter the complained of order was discretionary, mandamus will not lie.

## IV.

### Abuse of Discretion

Even if mandamus would lie in discretionary situations, relator is still not entitled to relief. Respondent made several findings in support of his order. If any finding was not so "arbitrary and capricious as to amount to an abuse of discretion," relator's request for mandamus relief should be denied. For the following reasons, I would conclude respondent did not abuse his discretion in finding a conflict of interest from the participation of Attorney General's office in both the criminal and civil litigation.

The Rules of Professional Conduct may limit prosecutorial authority. For example, in *Lehman v. State,* 792 S.W.2d 82, 85, fn. 2 (Tex.Cr.App.1990), we addressed the defendant's concern over the pleading practices of the prosecutor. We stated:

... A prosecutor is not free to put unfounded allegations in an indictment in the hope that a plenitude of accusation will make the defendant look like a criminal.

Rule 3.09 of the Texas Disciplinary Rules of Professional Conduct require him to "refrain from prosecuting or threatening to prosecute a charge that [he] knows is not supported by probable cause."

Our recognition that attorneys are subject to the Rules of Professional Conduct is not isolated. *See also, Duggan v. State,* 778 S.W.2d 465 (Tex.Cr.App.1989); *Stearnes v. Clinton,* 780 S.W.2d at 218–220; *and, Almanzar v. State,* 702 S.W.2d 653, 657 (Tex.Cr.App.1986).

Nevertheless, the plurality, relying on *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 6 (Tex.Cr.App.1990), effectively removes the trial judge's authority to require ethical conduct from the attorneys appearing before him. The plurality states:

A trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation.

Plurality op. 887 S.W.2d at 927. However, the plurality's reliance upon *Eidson* is misplaced for several reasons. First, *Eidson* was a plurality opinion which does not carry the force of binding precedent. Second, *Eidson* is distinguishable from the instant case. The *Eidson* plurality held that the decision concerning the disqualification of a prosecutor lies with the prosecutor, *not* the trial judge. *Id.,* 793 S.W.2d at 6.

... *Unlike any private attorney,* the local prosecutor—be he district attorney, county attorney, or criminal district attorney—is an elected official whose office is constitutionally mandated and protected. Prosecutors are still subject to the Rules of Professional Responsibility, but they must police themselves at the trial court level because of their status as independent members of the judicial branch of government ... [The district attorney's] violation of the rules will subject his cases to reversal on appeal when his unprofessional

---

14. I pause to note that there are cases which appear to allow the appointment of an independent prosecutor without the trial judge's consent or approval. *See, Lopez v. State,* 628 S.W.2d at 80; *and, Reed v. State,* 503 S.W.2d 775, 776 (Tex.Cr.App.1974). However, those cases do not purport to overrule the aforementioned authority, rather they rely upon *Bingham* and *Lopez* which impose an abuse of discretion standard.

conduct results in a denial of due process to a defendant. Lastly, he, like all elected officials, must regularly answer to the will of the electorate. Should his conduct create too much appearance of impropriety and public suspicion, he will ultimately answer to the voters.

*Id.*, 793 S.W.2d at 7. *Eidson* might be applicable had respondent attempted to limit the participation of relator or one of his employees. *See*, n. 11, *supra.* However, as previously noted, *Eidson* is inapposite because respondent's order limits the participation of the Attorney General's Office; the order does *not* limit relator's participation. The plurality apparently fails to recognize this critical distinction. Moreover, Boyles and Else have no constitutionally mandated or protected right to prosecute the real parties in interest. That right is held by relator, who has *not* been removed from the prosecution.

Respondent, as a district judge, must comply with the Code of Judicial Conduct which requires that he "*take* or initiate *appropriate disciplinary measures* against a lawyer for unprofessional conduct of which [respondent] become[s] aware." Code of Judicial Conduct, Cannon 3(B)(3). In the instant case respondent finds himself in the same position as the defense attorney in *Stearnes*, "between a rock and a hard place." *Stearnes*, 780 S.W.2d at 224.[15] Respondent, in order to comply with the Code of Judicial Conduct, must take some action to prevent what he perceives as unprofessional conduct. However, under the plurality opinion, respondent is subject to mandamus when he takes such action.

With little analysis, the plurality finds no conflict of interest in this case:

... We find respondent did not properly disqualify Else and Boyles on the basis of a conflict of interest because the real parties in interest failed to prove any prejudice to their rights, or deprivation of their right to due process.

Plurality op. 887 S.W.2d at 927. However, the record reveals that at least one assistant attorney general was connected with both the civil litigation and the criminal proceedings. The criminal action was initially investigated by assistant attorney general Penny Burt, who, with relator's consent, presented evidence to the Potter County Grand Jury which resulted in the indictments against the real parties in interest. *See*, n. 3, *supra.* The record also contains *undisputed evidence* that Burt appeared on behalf of the Attorney General in depositions taken in the civil action.

All attorneys are governed by the Texas Disciplinary Rules of Conduct. Rule 4.04 specifically applies to the prosecutor who participates in a criminal action when the result is to gain advantage in a civil matter.[16] The United States Supreme Court considered a similar issue in *Young v. U.S. ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In *Young*, two private attorneys were appointed to prosecute Young for criminal contempt. The two attorneys also represented the parties in civil

---

**15.** In *Stearnes*, the trial judge removed the defense attorney because he interviewed a State's witness. We stated:
 ... Judge Clinton, after condemning his conduct, removed [the defense attorney] because he interviewed a witness. On the other hand, [the defense attorney] could have been deemed incompetent if he did not interview her.
*Stearnes*, 780 S.W.2d at 225.

**16.** Rule 4.04(b) provides:
 A lawyer shall not present, participate in presenting, or threaten to present:
 (1) criminal or disciplinary charges solely to gain advantage in a civil matter....
*See also*, Ethics Opinion 332 (August, 1967):

CONFLICTING INTERESTS—PUBLIC PROSECUTOR REPRESENTING CIVIL SUITORS—It is improper for a public prosecutor (District Attorney, County Attorney or City Attorney) to represent any party in a civil matter arising out of an occurrence which also is the subject of criminal investigation or prosecution within the jurisdiction of such public prosecutor except in rare instances where his duties as prosecutor have been fully performed before actual or contemplated connection with the civil matter and where the civil matter and where also no advantage has been obtained through the public office.

litigation against Young. The Supreme Court held:

> ... The prosecutor is appointed solely to pursue the public interest ... A private attorney appointed to prosecute ... therefore certainly should be as disinterested as a public prosecutor who undertakes such a prosecution.
>
> \* \* \* \* \* \*
>
> ... It is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters.
>
> \* \* \* \* \* \*
>
> ... We may require a stronger showing for a prosecutor than a judge in order to conclude that a conflict of interest exists. Once we have drawn that conclusion, however, *we have deemed the prosecutor subject to influences that undermine confidence that a prosecution can be conducted in disinterested fashion.* If this is the case, *we cannot have confidence in a proceeding in which this officers plays the critical role of preparing and presenting the case for the defendant's guilt.*

*Id.,* 481 U.S. at 804–811, 107 S.Ct. at 2136–2138.

Thus, even though the plurality would require the real parties in interest to "prove ... prejudice to their rights," Plurality op. 887 S.W.2d at 927, *Young* clearly does not require the real parties in interest to prove prejudice. A constitutional violation may occur simply upon proof of a conflict of interest. *Young,* 481 U.S. at 811, 107 S.Ct. at 2138. It is notable that the plurality does not cite, distinguish or in any way acknowledge *Young,* even though respondent specifically relied on *Young* and found a conflict of interest and that "the Attorney General's participation in [the prosecution] undermines public confidence in the prosecution." *Id.* In spite of this finding of a conflict of interest, respondent limited his order so that relator could retain the benefit of the work previ-

ously performed by the Attorney General's Office and have available the experience possessed by Boyles and Else. Relator does not state why this limitation is detrimental to his ability to prosecute the instant case.

The issue is whether respondent's finding of a conflict of interest was an abuse of discretion. Plurality op. 887 S.W.2d at 925. An abuse of discretion is a decision by the trial judge "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Cr.App.1992). *See also, Erdman v. State,* 861 S.W.2d 890, 894 (Tex.Cr. App.1993) (Baird, J., concurring). In light of the aforementioned participation of former Assistant Attorney General Burt in both the civil litigation and the criminal proceedings, Rule 4.04 of the Texas Disciplinary Rules of Conduct and *Young,* one cannot conclude that respondent abused his discretion in finding a conflict of interest. Consequently, even if mandamus would lie in discretionary situations, relator is still not entitled to relief.

For all of the foregoing reasons, I respectfully dissent.

OVERSTREET, J., joins this opinion.

OVERSTREET, Judge, dissenting on Relator's Application for Writ of Mandamus.

I write to clarify my reasons why I believe that a writ of mandamus is not warranted nor proper in the instant cause. Suffice it to say, over the last few years we have muddied the water regarding mandamus, and we are duty bound to clear the same for the bench and bar.

Of greatest importance and concern is the right of the trial court to insure that a fair trial is received by both the State, i.e. the people of Texas, and the accused defendants. Article 2.03(b), V.A.C.C.P. explicitly declares that it is the *duty* of the trial court to act such as "to insure a fair trial for both the state and the defendant[.]" (Emphasis added.) This includes a concern for avoiding conflicts of interest among the parties and litigants. This Court in *State ex rel. Eidson*

*v. Edwards,* 793 S.W.2d 1, 6 (Tex.Cr.App. 1990) (plurality opinion) has even acknowledged that "[t]here may be instances when a prosecutor *must* recuse himself from the prosecution of an individual" and that the failure to do so would be a violation of due process rights. (Emphasis added.)

In the instant cause, it does appear that with the assistant attorneys general prosecuting the criminal cases there might well be some conflict of interest, or at least the potential for the Office of the Attorney General's duties in the civil spectrum, i.e. the pending civil action, to conflict with the criminal prosecutions against the real parties in interest here who are also accused in the civil action. Rule 4.04(b) of the Texas Disciplinary Rules of Professional Conduct states that a lawyer shall not present or participate in presenting criminal charges solely to gain an advantage in a civil matter. The accompanying comment to the rule expresses concerns about using the criminal process to coerce a party in a private matter, which improperly suggests that the criminal process can be manipulated. It is certainly at least arguable that the involvement by the Office of the Attorney General in this criminal prosecution could suggest that such prosecution is being used to gain an advantage in the pending civil matter involving the real parties in interest here. Such issue is at least quite arguable, certainly such as to preclude the State's requisite showing for the extraordinary relief of mandamus to overturn the trial court's ruling.

*U.S. ex rel. S.E.C. v. Carter,* 907 F.2d 484 (5th Cir.1990) held that it was reversible error to appoint Securities and Exchange Commission (SEC) attorneys to act as special prosecutors in criminal contempt proceedings where the SEC was "locked in an on-going civil struggle" with the parties. It emphasized concerns that "[t]he SEC attorneys' previous involvement in the underlying civil case created a potential for conflict and an appearance of impropriety." *Id.* at 488. It noted that the competing interest stemmed from the special prosecutors' concurrent representation of a government agency, i.e. the SEC. *Id.* at 486. The Court found the issue so critical that it raised it *sua sponte. Id.* at 488. In my view, the respondent, i.e. the trial court, acted well within the bounds of its discretion in likewise finding a potential for conflict and an appearance of impropriety in the assistant attorneys general's participation in the prosecution in the case at bar when the Office of the Attorney General was likewise locked in an on-going civil struggle with the real parties in interest.[1]

For example, a large civil law firm, with multiple divisions and offices, could institute a civil action against various entities; and after initiating proceedings in that civil action, including securing discovery, e.g. via depositions, interrogatories, and requests for admissions, it thereafter gets different lawyers in the same firm, though perhaps in a different office or division, to prosecute a criminal action at the behest of the local district attorney. Such would clearly raise the appearance of impropriety and potential conflict with such civil and criminal actions being undertaken by the same firm against the same parties, regardless of the assurances of non-cooperation by the various offices and divisions of that firm. As noted by the plurality, the criminal charges in the instant cause involve allegations similar or identical to those that were the basis of the civil action involving nursing home residents. *Hill v. Pirtle,* 887 S.W.2d 921, 923 (Tex.Cr. App.1994.)

---

1. In making its oral pronouncement in ruling on the motions of the real parties in interest, the respondent, i.e. the trial court, stated, among other things,

 Our system of justice is not just a system that requires the effective administration, but it's a system that requires that the public have confidence in that administration.

 This Court believes that it has not only the power, but the duty to see to it not that the system is administered in an effective way, but that justice is done.

 \* \* \* \* \* \*

 In summary, I believe that the Defendants have argued that the Attorney General's participation undermines public confidence in the prosecution. I agree with those assessments.

This Court has recognized that mandamus is a drastic remedy, to be invoked only in extraordinary situations. *Perkins v. Court of Appeals,* 738 S.W.2d 276, 284 (Tex.Cr.App. 1987). In fact, we have said, "A willingness to issue writs of mandamus in less than extraordinary situations would encourage piecemeal litigation and frustrate the efficient administration of justice." *State ex rel. Sutton v. Bage,* 822 S.W.2d 55, 57 (Tex.Cr. App.1992). *Black's Law Dictionary* 985, 1113, 1148 (Revised Fourth Edition 1968) provides the following definitions:

> Ministerial Duty: One regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist. [citations omitted] It arises when an individual has such a legal interest in its performance that neglect of performance becomes a wrong to such individual. [citation omitted]

> Judicial Duty: One that requires exercise of judgment or choice of alternatives in its performance. [citation omitted] One that requires exercise of judgment or decision of a question of fact. [citation omitted] One that requires use of discretion or examination of evidence and decision of questions of law and fact. [citation omitted] One that legitimately pertains to an officer in judicial department. [citations omitted]

> Mandamus: We command. This is the name of a writ (formerly a high prerogative writ) which issues from a court of superior jurisdiction, and is directed to a private or municipal corporation, or any of its officers, or to an executive, administrative or judicial officer, or to an inferior court, commanding the performance of a particular act therein specified, and belonging to his or their public, official, or ministerial duty, or directing the restoration of the complainant to rights or privileges of which he has been illegally deprived. [citations omitted]

Clearly, a judicial duty involves discretion while a ministerial duty does not. Equally clearly, in the instant cause, the respondent/trial court heard and evaluated testimony, weighed evidence, and made a discretionary decision thereon, thus exercising a judicial rather than ministerial duty.

All in all, the record does not show that the trial court violated any ministerial duty which would entitle the relator to the relief he seeks. In light of the record the relator has failed to meet the high standard for obtaining the drastic remedy of mandamus. Thus mandamus is not warranted. The plurality is usurping the trial court's right and *duty* to act such as to insure a fair trial for both the State, i.e. the people of Texas, and the defendant. The trial court is certainly in the best position to determine such, and that decision, like many others, should not be reversed via mandamus. Mandamus should never be used as an appellate remedy.

I note that attached to the relator's Petition is an affidavit from the Attorney General of Texas. In it he expresses very legitimate and justifiable concerns about his office's ability to assist local jurisdictions in prosecuting certain types of cases, particularly in situations where those jurisdictions lack the requisite expertise or resources. It states that if his office "were barred from assisting local prosecutors in this manner, the [S]tate would not be able to prosecute many of these cases due to inadequate resources of many local prosecutors' offices." However, in the instant cause, there is no showing that relator lacks the resources or expertise to prosecute the real parties in interest. I agree that the assistance is important. But when assistance from the attorney general presents a potential for conflict of interest, as the trial court held in the instant case, the right to a fair trial free of conflict of interest should always win.

## CONCLUSION

In my view, based upon the facts reflected in this record, the respondent did not violate any ministerial duty and the relator is not entitled to the relief he seeks. Simply put, the respondent acted under his judicial duty, not ministerial duty, and therefore manda-

mus is not the appropriate remedy. Having said such, the water is much clearer to me and hopefully to the bench and bar, including this honorable Court. Because the plurality refuses to see clearly, I dissent with principle.